## KENNEDY v. BOYKIN.

1. FINDINGS OF FACT—INTEREST.—A mortgage given to secure payment for supplies heretofore advanced and hereafter to be advanced, provided that all sums should bear interest from the date when advanced at the rate of 15 per cent. per annum, to be paid out of the first proceeds of the crop raised, which should be shipped to the mortgagee, half by November 20th, and half by December 20th of that year. In March following a settlement was made, and notes given for the balance with interest at 15 per cent. *Held,* that the mortgage only drew 7 per cent. interest after December 20th, and the amount agreed upon in March following was the unpaid debt, which, so far as it was secured by the mortgage, bore interest thereafter at 7 per cent.

2. MORTGAGE BY TENANT IN COMMON—PARTITION.—Where a tenant in common gives a mortgage on a specific part of the common property, describing it by metes and bounds, under a belief that he owned the same in severalty, the mortgagee has an equity to require, when partition is sought by the other co-tenants, that it shall be so made as to allot the specific portion covered by the mortgage as the share of the mortgagor, and thereby save the lien of the mortgage, provided this can be done without prejudice to the rights of the other co-tenants. And where there are several successive mortgages, this equity enures to each mortgagee in the order of the dates of the several mortgages; so that, if possible, the mortgages may take effect, according to their intent, on the fee in the land.

3. MORTGAGE BY TENANT IN COMMON—PARTITION.—And in case a partition in kind be impracticable, and a sale be ordered, the same equity calls for a separate sale of the parcels mortgaged, provided the same can be done without prejudice to the interests of the other co-tenants.

4. DESCRIPTION OF LAND—ERROR IN RECORDING.—The record of a mortgage on a stated number of acres, "more or less," is notice to subsequent mortgagees of its lien upon all the land embraced within its metes and bounds; and if in such case the recording officer erroneously writes 200 acres upon the record instead of 2,000 acres, as stated in the mortgage, a subsequent mortgagee cannot restrict the prior mortgage to the 200 acres as written on the record.

5. APPEALS.—A mortgage cannot be held by this court to be void for uncertainty in description, when no such point was raised on Circuit, and the facts stated in the appeal record do not show that the master and Circuit Judge erred in treating the description as sufficient.

Before HUDSON, J., Kershaw, February, 1890.

This was an action for partition, commenced in April, 1890, by Harriet B. Kennedy and Flora Boykin against Thomas L. Boykin and others, heirs of Burrell Boykin, deceased, certain lien creditors of Thomas L. Boykin being also parties defendant.

In addition to the matters hereinafter stated in the reports of the master and the Circuit decree, so much of the DeSaussure mortgage as bears upon the rate of interest is here given and was as follows:

"And the said Thomas L. Boykin on his part agrees and promises to pay to the said Louis D. DeSaussure the sum thus to be advanced with interest on the same from the date of the advances at the rate of fifteen per cent. per annum, out of the first proceeds of his crop of the present year, to be raised upon his said plantations; and to secure to the said Louis D. DeSaussure the prompt payment of the same, and also the payment of the sum of five thousand and five hundred and one dollars and two cents already advanced for agricultural purposes and now due and owing with interest on the same at the rate of fifteen per cent. per annum from the date of the advances therefor, the said Thomas L. Boykin agrees to forward to him for sale upon commission his entire crop of cotton to be raised upon his said plantation during the present year, so soon as the same can be gathered and prepared for market, excepting only such proportion of said crop as the laborers producing the same may be entitled to under their contract with the said Thomas L. Boykin, and he covenants that

he will have in the hands of the said Louis D. DeSaussure for sale as aforesaid one-half of the said crop of cotton on or before the twentieth day of November next, and the balance on or before the twentieth day of December thereafter; and he hereby authorizes the said Louis D. DeSaussure to sell the said cotton as soon as received," &c.

In March thereafter, Thomas L. Boykin gave to Louis D. DeSaussure his two notes, aggregating $4,441.91, both of which called for interest before and after maturity at the rate of 15 per cent. a year.

The first report of E. M. Boykin, Esq., master, was as follows:

The above case having been referred to the master under an order of court by Judge I. D. Witherspoon, presiding judge, bearing date June 4, 1890, the master would respectfully report, that he finds that the landed estate of Burwell Boykin to consist of 5,038 acres, lying in one body as shown by a plat of survey made by S. H. Boykin. Since his death and under the direction of his last will and testament, the following disposition has been made of portions of the land: first, as directed by his will, the residence known as Mount Pleasant and two hundred acres of land attached (200) has been laid off in behalf of Thos. L. Boykin and marked on the plat as No. 1.

That in pursuance of the directions of the said Burwell Boykin's will, providing for the settlement of his daughter's interest, certain tracts or parcels of land were assigned by order of court upon action duly commenced in the Court of Common Pleas, to H. B. Boykin and Flora Boykin, namely: to the defendant, H. B. Boykin Nos. 1, 2, 3, and 4—represented on the general plat as No. 5 on the general plat submitted to the court, and containing in the aggregate five hundred and forty-four 7–10 (544 7–10) acres, recorded in book DD, page 209, office of register of mesne conveyance for Kershaw County, conveyance executed by R. E. Wall, special referee, and bearing date Nov. 10, 1875. And to the defendant, Flora Boykin, certain tracts of land marked respectively 5, 6, 7, in plat thereof made under said order of court by H. Edwards, surveyor. Said tract of land containing in the aggregate four hundred and thirty-six 5–10 (436 5–10) acres, conveyance executed by R. E. Wall, special referee, bearing date Nov. 10, 1875, and recorded in book DD, and page 212,

office of register mesne conveyance for Kershaw County, and in the general plat herewith submitted No. 4.

On the 9th day of Feb., 1871, Thos. L. Boykin, co-heir and remainderman, mortgaged to Harriet M. Lang a portion of the general tract of 5,038 acres, and after that conveyed to S. L. Lang by deed bearing date 1st day January, 1879, a part of the land which he had mortgaged to Harriet M. Lang, thereby satisfying the mortgage he had given on the same. Said land being represented by tract No. 6 on the general plat submitted. and conveyed by the said S. L. Lang to Arthur and DuBose, whose interest is represented by Pelzer, Rodgers & Co. May 19, 1882, a compromise was agreed upon, which purports to carry out and confirm by consent of all the parties in interest, the title to said tract marked No. 6 to the present holders, Pelzer, Rodgers & Co., representing Arthur and DuBose, and sustained by order of court, containing 750 acres. The adjoining tract to the above, containing 432 acres, and included in the same proceedings before the court, and sold under its order by the master, J. D. Dunlap, and purchased by Mrs. S. W. Boykin, said tract marked on the general plat submitted No. 7.

On the 22nd of September, 1873, was sold by the executor, T. L. Boykin, by order of court, all that tract of land containing 449 acres, as described in plat and marked as No. 2 in general plat submitted. This tract was sold as aforesaid by T. L. Boy-. kin, executor, to the estate of A. A. Boykin, proceedings in the same being duly recorded in clerk's office of Kershaw County in book CC, page 449. In the division of the lands of the estate of A. H. Boykin, 113 acres of the aforesaid tract fell to the share and is now held by W. D. Boykin, and marked tract No. 3. 336. acres fell to Allen J. Boykin, and is marked upon said plat as No. 2, and was mortgaged by him to Pelzer, Rodgers & Co., and bought on foreclosure sale by E. Miller Boykin, who now holds the same.

23 acres of land adjoining what is known as the Miller house, and a part of the lands of the estate of Burwell Boykin, was sold on the 21st day of January, 1878, by Thos. L. Boykin, executor, to Allen J. Boykin, and is designated on plat as No. 2. This tract was also mortgaged by said Allen J. Boykin to Pelzer,

Rodgers & Co., and was sold under foreclosure of mortgage by the master, J. D. Dunlap, on the 5th day of December, 1887, and bought by E. Miller Boykin. This tract is marked No. 2, as well as the preceding one.

LIENS AND MORTGAGES.—Mortgage of Thos. L. Boykin to L. D. DeSaussure, given on the 31st of May, 1872, on tract of land situated in the County of Kershaw, S. C., containing 823 acres of land, which mortgage is recorded in the office of the register mesne conveyance of Kershaw County, in book No. 2, page 618, claimed to belong to T. L. Boykin in his own right, and to be no part of the estate of Burwell Boykin, said land being included in the plat of general survey as a part of the lands of Burwell Boykin, upon which will be due on 1st Oct., 1890, $15,814.30.

Mortgage of J. A. Armstrong, May 16th, 1874, amounting to (at this date) the sum of $8,924.10, said mortgage being given by Thos. L. Boykin upon his interest in the lands of the estate of Burwell Boykin, said mortgage bearing date 16th December, 1874.

Mortgage of Thos. L. Boykin to Mrs. Charlotte Taylor on 500 acres of land for the sum of $600, transferred by her to A. H. H. Stuart (said mortgage bearing date 1st of March, 1873), and foreclosed and a sale made on the 5th day of November, 1877, and the lands bought by said Stuart, but he has never received possession or title for the same.

Mortgage of Thos. L. Boykin to G. W. Witte & Bro. upon two thousand acres of land of the estate of Burwell Boykin, as described in said deed, dated 8th day of January, 1873, said claim amounting to the sum of $10,641.10, with interest from May 9th, 1880, recorded in book BB, page 554.

It has been referred to the master to propose an equitable plan for division of the interest in question among the heirs of the said Burwell Boykin, said heirs consisting of T. L. Boykin, in his own right, under his father's will, to one third of said lands, to enter in possession of the same at his mother's death, and his interest as heir at law in the estates of Eugene Boykin and John Boykin, who held a vested interest in said land to the extent of one-third each, giving the said Thos. L. Boykin 41–90 interest

in the said lands of the estate of Burwell Boykin.  Mrs. Mary L. Cureton, who died intestate, and whose interest in the estates of her brothers, John and Eugene, is represented by her hus-band, E. B. Cureton, and her other heirs at law, her surviving brother and sisters, and the children of Mrs. S. W. Clarke.  Mrs. H. B. Kennedy has an equal share as heir at law in said estates of Eugene and John Boykin.  Miss Flora Boykin is entitled to an equal share as heir at law in said estates of John and Eugene Boykin.  The estate of Mrs. Sally W. Boykin represents her interest as heir at law in the said intestate estates of her sons, John and Eugene Boykin.

The above represents the parties entitled to claim an interest under the will of Burwell Boykin in his landed estate.

The entire debt rests upon the share of Thos. L. Boykin in this land, none of the other heirs, as appears by the record, be-ing charged with any portion of said debt.  A distribution of the interest in said land is desired by all of the heirs and the credit-ors who represent the interest of Thos. L. Boykin.  The order of reference requests that the master report upon the best mode of assigning said interest.  There are two ways of doing this, one by allotment to each party of their interest in kind, giving to each a portion of the land at a valuation covering their inter-est in the same.  The other plan would be to divide the land into tracts or parcels as to size and quality to bring their full value, and sell the same upon favorable terms, say ¼ cash, the balance in 1, 2, 3 years' credit.  This the master would suggest is a direct way and mode of getting an accurate estimate of the mar-ket value of the lands.  A sale in open market each bidding for what they wanted, would leave no question of an under or above valuation.

The difficulty of making such an allotment as would be satis-factory to all the parties in interest, seems to the master would only be obviated by reducing the lands to a money value by a sale, and assignment to each one their interest in that form, giv-ing to those who wish to have the land they desire, an opportu-nity of purchasing the same on favorable terms, and paying for them by their interest in the proceeds.  There is no difficulty in dividing the lands into certain lots and parcels, and giving the

same to A and B as their portions of the estate; the difficulty comes in making a valuation of the lands so as to cover the claim of each heir, to satisfy the one without, in the estimation of the others, infringing on his rights. These are the two modes of disposing of the division of the lands. All of the heirs, except in the case of Thos. L. Boykin, are untrammelled, and are ready to take such immediate action as would result in a settlement of the estate, and the creditors representing the interest of Thos. L. Boykin are equally willing to do so.

The master is directed in the order, "If he thinks these lands can he partitioned among the heirs so as to do full and complete justice to all, to so partition them, and report in full his partition and a plat showing his allotment to the respective parties." The master has set forth in the foregoing portion of his report his opinion that he could not, according to his judgment, so allot the land to each and every one as to do justice to all, in the absence of any basis of valuation, but recommends a sale and a division of the proceeds; but inasmuch as upon a conference with the parties interested, he finds that the majority of the same desire a division in kind and an allotment of their interest in the lands as such; and he considering that, according to his judgment, he could not arrive at a fair and just conclusion, asks that he may be authorized to appoint a commission for such valuation and allotment desired by said heirs, should the court so elect, as they are the parties most interested, and the difficulty of valuation and allotment being overcome, a fair and equitable mode of division.

The master finds that in the record of the mortgage of T. L. Boykin to Witte Bros., deed bearing date Jan. 8th, 1873, recorded in book BB, page 554, that in the record of said mortgage the number of acres is given at two hundred (200), more or less. The master has based his statement upon the evidence submitted to him of the original mortgage duly certified by the clerk of Kershaw County as of record, calling for 2,000 acres. Said record is as follows: "All that piece, parcel, or tract of land containing two hundred acres (200), more or less, situated in said county on both sides of the Charleston road, bounded north by

estate of B. Boykin, east by same, south by lands of Kennedy, Cantey, and Boykin, west by the Wateree River."

All of which is respectfully submitted.

The second report of the master was as follows:

The above case having been recommitted to the master under an order of Judge I. D. Witherspoon, presiding, for the purpose set forth in said order, and bearing date September, 1890, the master would respectfully report, that in pursuance of the original order of reference, he made a return of the legal status of the lands of the estate of Burwell Boykin, in his report made in the case under said order of reference. Without considering or in any way determining the priority of liens in the claims of the creditors of Thos. L. Boykin, the present order of reference, recommitting the case to the master, requires that he should consider and report upon said claims, and the law and fact in said case. The master would respectfully refer to the report made under the original order of reference, as above stated, for the facts there considered, and that it be considered as part of this report.

The master finds as a matter of fact, the mortgage to Louis D. DeSaussure of 823 acres of land given by Thos. L. Boykin to said L. D. DeSaussure, the said DeSaussure claims that the land so mortgaged by said T. L. Boykin is not and never has been a portion of the estate of Burwell Boykin, but that it was given with the metes and bounds called for in said mortgage to said T. L. Boykin by his father, Burwell Boykin, during his life-time, and that title to the same was absolutely vested in him, and not as co-heir in an undivided interest in the same. The terms of the will are explicit as regards the tenure by which the lands of the estate should be held by the three sons of the testator, making it imperative, to create a separate interest in any one of them, that it should be done by "deed," and there is no evidence that such deed was ever executed. As a matter of law the master finds that Thos. L. Boykin was entitled at his mother's death to a $\frac{1}{3}$ interest under the will in the landed estate, and as co-heir with his mother's representatives and his sisters to an equal interest in the remaining $\frac{2}{3}$. And that the mortgage given by

Thos. L. Boykin to Louis D. DeSaussure covers his undivided interest in the said 823 acres only, said interest holding equally against all of the landed estate. The lien of the mortgage for the balance due is upon the undivided interest of T. L. Boykin in premises mortgaged. (See decree of Judge Hudson, Feb. 3, 1883.)

The next question, as to amount still due on the mortgages of T. L. Boykin to L. D. DeSaussure. I find as a matter of fact that on the first day of March, 1873, the balance due by Boykin to De-Saussure on account of the debt secured by said mortgage, was the sum of $4,441.91, as evidenced by the notes then given by Boy-kin, and which he testifies represented his indebtedness on account of his transactions with DeSaussure; that this balance bears interest from the 1st of March, 1873, at the rate of 7 per cent. per annum, and there has been paid on account of this indebtedness, through rents received by DeSaussure, the following amounts: * * * and that the balance now due by T. L. Boykin on the mortgage amounts to the sum of $2,598.05, to January 19, 1891.

Upon the same point I find as matter of law, that as Armstrong had no lien upon the mortgage premises on the first day of March, 1873, the date when the balance was struck between Boykin and DeSaussure, and the notes given, he is bound by the settlement then made as to the amount of the mortgage debt, and as all questions as to the proper application of payments were then settled by DeSaussure and Boykin, that the mortgage debt, so far as regards Armstrong, can bear interest after the balance is struck only at the rate of 7 per cent. That the amount reported above as due on the mortgage debt, on the 1st day of March, 1873, is not affected by the statute of limitations, as 20 years have not elapsed since the maturity of the mortgage, and as it is claimed by Armstrong, and admitted by those representing the DeSaussure mortgage, that payments have from time to time been made upon the mortgage debts, as appears by the statement made above.

We find a mortgage of G. W. Witte upon two thousand acres of land given by Thos. L. Boykin, as described in said deed

dated     day of January, 1873, said claim amounting to the sum of $10,641.12, with interest from Sept. 1st, 1880.

We also find a mortgage of J. A. Armstrong, given by said Thos. L. Boykin, bearing date December 16th, 1874, the claims of Armstrong, August 16th, 1890, amounting to the sum of $8,-924.10 upon his interest in the estate of Burwell Boykin. J. A. Armstrong in his answer claims that the mortgage to G. W. Witte, though calling in the original deed for 2,000 acres of land, more or less, as spread upon the record it calls for but 200 acres, more or less, with certain metes and bounds, as set forth on the record, "All that piece or parcel or tract of land containing 200 acres, more or less, situated in said county on both sides of the main Charleston road, bounded north by estate of B. Boykin's, east by same, south by lands of Kennedy, Cantey, and Boykin, and west by Wateree River." Armstrong claims that the entry of 200 acres on the record was all the notice acquired by him on his part, in consequence that G. W. Witte's mortgage (a prior lien), though calling for 2,000 acres, more or less, set forth by metes and bounds, must be restricted to the 200 acres as set forth on the record.

The object of the record is to give due notice of the character and extent of any existing legal lien upon property involved in the case, and if there was nothing but the bare statement that the mortgage was upon 200 acres of land—confining the description of the lands mortgaged absolutely to the stated quantity of land, 200 acres—then the question would be who is to suffer for the mistake of the clerk in making the incorrect entry ; but should it appear that there was sufficient notice implied beyond the simple statement as to quantity, the intention of the law would be answered, and due notice would be considered as having been given.

The master finds as matter of fact in this case the description of the property to be as appears upon the record 200. acres, *more or less*, with such metes and bounds given as would clearly indicate to any one seeking to establish a junior lien, the necessity of seeking further information, beyond the *"pro forma"* statement of so many acres, more or less, which in practice is never held to be of special importance in fixing with any degree of ex-

actness the quantity of land. The master finds as matter of law, that the mortgage of G. W. Witte is so recorded as to hold for the 2,000 acres, more or less, if the same can be found within the metes and bounds as laid down in such mortgage and record of the same, to the extent of T. L. Boykin's undivided interest in the same.

The master would further report that on the 1st day of March, 1873, T. L. Boykin gave to Mrs. C. B. Taylor a mortgage of 500 acres of land, with certain metes and bounds, to secure the payment of his bond to her for the sum of $600; that no part of the mortgage debt having been paid, that on the 27th day of February, 1874, a decree was recovered for amount of said mortgage debt; that in pursuance of said decree, said land was sold by the sheriff of Kershaw County to the said A. H. H. Stuart, but no title given or transfer made. This is a history of the case as it stands on the record. It is not represented by any one, principal or attorney, and the metes and bounds as described in the mortgage infringe upon lands adjudged by the court under the terms of the will, and under the order of court, raising .questions that the master would respectfully submit to the court for its action.

It is claimed by the attorney of J. A. Armstrong that the undivided interest of Thos. L. Boykin in one hundred and fifty acres of land, more or less, now in the possession of Francis J. Pelzer, and described in deed, should be adjudged as subject to the mortgage of said J. A. Armstrong. The master would respectfully report that the said title to the said land having been confirmed by order of court, questions arise that do not come within the scope of this order.

The case then came up on exceptions before the Circuit Court, whose decree was as follows:

At the April term of the Supreme Court, 1884, was decided the case of *Boykin* v. *Boykin,* reported in volume 21, page 513, S. C. Reports. It was there held that the large body of land, situated in the County of Kershaw, containing about 5,000 acres, passed under the will of Burwell Boykin to his three sons, Thos. L. Boykin, Eugene Boykin, and John Boykin, they taking there-

in a vested and transmissible interest; but this land was not subject to partition during the life-time of Sallie W. Boykin, widow of Burwell Boykin. In that suit it was contended by Thos. L. Boykin, and by certain persons to whom he had given mortgages upon different parts of this tract of land, among them Louis D. DeSaussure, that the land was the separate property of Thos. L. Boykin by virtue of a parol gift from the father, Burwell Boykin, to Thomas L. Boykin during the life time of the said Burwell Boykin, and that therefore the mortgagees, especially Louis D. De-Saussure, had a lien upon this land, independently of any of the limitations of the will of Burwell Boykin. The result, however, of that judgment was that no part of this land, not even the 823 acres over which Louis D. DeSaussure had a mortgage, was the separate property of Thomas L. Boykin, but that the whole passed under the will of his father Burwell, but that no partition could be made of the said land until after the death of Sallie W. Boykin, the widow of Burwell Boykin.

Sallie W. Boykin, the widow, is now dead, and the plaintiffs, as heirs at law of Eugene and John Boykin, bring this suit for the partition of these lands. By an order of the court it was referred to the master to take testimony and report the facts to the court bearing upon all the issues raised in the pleadings. That report was submitted September 1st, 1890, and the cause came on for a hearing upon that report and exceptions to it before Judge Witherspoon. At the said September term of the court, finding that the master had failed to report fully what he conceived to have been necessary for him to report, he passed an order recommitting the case to the master for a further report, especially upon the priority of the liens of the several mortgage creditors of Thomas L. Boykin, and to report to the court his finding of facts and conclusions of law. Further testimony was taken and further argument had upon the matters referred to him; and on the 26th of January, 1891, the master, Edward M. Boykin, submitted his final report. To that report various exceptions were filed by parties to the suit, especially the mortgage creditors of Thomas L. Boykin.

Upon these exceptions to the two foregoing reports, the case came on to be heard before me at the February term of the court

for Kershaw, 1891. In the reported case of *Boykin* v. *Boykin* above mentioned, and in the testimony taken by the master under the references ordered in this suit now under consideration, the facts are fully set forth. I do not deem it necessary to give here a detailed statement of the facts of the case, because my time is limited, and should the case be carried further, the facts are available to the counsel desiring to use them.

The only contention is as to the validity and priority of the mortgages given by Thomas L. Boykin upon certain parts of this large body of land. There is no doubt that Mr. Boykin, when he gave two of these mortgages, to wit, one to Louis D. De-Saussure upon 823 acres, and the one to Witte Bros. upon 2,000 acres, regarded the land as his, and that the said mortgagees so regarded it; but it has been adjudged not to have been the separate land of Thomas L. Boykin, independently of the will of his father, but that it did pass under that will, in which it was conveyed to the three sons aforesaid; and we must regard it and do so regard it from the testimony in the previous cases, as well as in this, as a body of land in which Thos. L. Boykin held a one-third interest as tenant in common with his two brothers, Eugene and John, both of whom died unmarried and intestate. Hence it is that we encounter great difficulty in adjusting the rights of these respective mortgagees.

Pelzer, Rodgers & Co. are the assignees of the mortgage of Louis D. DeSaussure and A. B. Rose, as trustee, also part owner thereof, but for convenience the mortgage will be throughout this decree spoken of as the mortgage given to Louis D. DeSaussure. The first question raised in behalf of this mortgage of Louis D. DeSaussure on 823 acres of land is, that the land was the separate property of Thos. L. Boykin by virtue of parol gift from his father, Burwell Boykin. This question the master decides against him, holding that it was the property of Burwell Boykin until his will took effect and passed under that will. In this holding we concur.

The next question raised was as to the amount due upon this mortgage debt, it being contended that the mortgage debt bore from its date interest at 15 per cent. per annum. The master has found as a matter of law that the mortgage debt bore only 7

per cent. from the 1st day of March, 1873, when Louis D. De-Saussure and Thomas L. Boykin had a settlement, wherein the balance due to DeSaussure was evidenced by two notes aggregating the sum of $4,441.91, and that upon that amount interest must be calculated at only 7 per cent. In this the master is correct. The mortgage, it is very true, called for 15 per cent. upon the amounts mentioned therein, but these amounts were payable at a given day, to wit, the 20th day of December, 1872, and no stipulation that interest should run at 15 per cent., payable until the whole should be paid or payable annually. I think the whole debt should be paid. From the terms of the mortgage, only 7 per cent. could be calculated upon the balance due December 20th, 1872. Hence when a balance was struck by Boykin and DeSaussure on the 1st of March, 1873, that balance, in so far as the mortgage debt is concerned, could only bear 7 per cent.

The next contention of the holders of the DeSaussure mortgage is that in the partition of this estate, the 823 acres should be set apart to Thomas L. Boykin, so as to enable the mortgage creditors to save his debt. We think that equity would so require it to be done, if it can be done without injury to the other tenants in common and without injury to the other mortgagee. This mortgage to L. D. DeSaussure bears date 31st of May, 1872.

The next mortgage in point of time given by T. L. Boykin was to Witte Brothers upon 2,000 acres of this 5,000 acres of land, which mortgage bears date 8th January, 1873. In the record of this mortgage the number of acres is spoken of as 200 instead of 2,000. On December 16, 1874, Thomas L. Boykin gave to J. A. Armstrong a mortgage upon all his interest in the estate of Burwell Boykin. This mortgagee contends that the mortgage of Witte Brothers must be confined to 200 acres of land, the amount called for in the record of the mortgage, and cannot be extended over the 2,000 acres conveyed in the original mortgage, so far as he, a subsequent mortgagee, is concerned. He contends that this mistake in the record must work an injury to Witte Brothers rather than to a subsequent innocent purchaser without any notice except that contained in the record. In other words, that Witte Brothers are bound by the record.

My own opinion is that where there is a mistake in the record,

that those for whose benefit it is intended, to wit, subsequent purchasers and creditors, should suffer rather than the innocent mortgagee, who did all that the law required of him in delivering the paper for record in due time to the register mesne conveyance, and that if either of these parties must be driven to action against the clerk for a mistake, it should be the subsequent purchaser instead of the innocent first purchaser, who did all that the law required of him in delivering the paper in due season for record to the proper officer. I think that upon principle and reason this is a better doctrine than that which holds that the first purchaser must suffer by the mistake of the officer, and not the subsequent.·

But in this particular case, whilst there is a mistake as to the quantity of land, there is no mistake in the record as to the boundaries, and the boundaries being correctly given must prevail over the mere matter of quantity. The record is notice of all it contains, and if the boundaries are correctly given, it is a sufficient warning and sufficient notice to all subsequent purchasers and creditors, at least it is sufficient to put them upon inquiry, and I concur with the master when he holds that as against Armstrong the Witte mortgage is good for the 2,000 acres.

It is contended by Witte Brothers, that in the partition of this estate there should be assigned to T. L. Boykin the 2,000 acres, or at least so much thereof as will satisfy his interest in the land. There is an equity in these mortgagees to have this done, provided it can be done without conflicting with the interest of the co-tenants and senior mortgagee, L. D. DeSaussure. So far I meet with no difficulty in concurring with the master in his findings of fact and conclusions of law. I think he has correctly fixed the amounts due upon the respective mortgages, and has correctly settled the question of priority ; nor do I have any hesitation in holding that the principles of equity contended for by the holders of these respective mortgages are correct, that is, that in the partition their respective mortgages should be protected if practicable; but how to reach this practical result is the chief difficulty in my mind.

The 823 acres mortgaged to DeSaussure and the 2,000 acres mortgaged to Witte Brothers are separate and distinct tracts not

contiguous, so far as I am informed, and how in the partition of this real estate it can be expected that each of these tracts should be allotted to Boykin is more than I can see to be consistent with the interest of the other co tenants. If it can be done, it certainly should be done, and DeSaussure then would have a good lien upon 41–90 of the 823 acres, and Witte Brothers a good lien upon 41–90 of 2,000 acres, because it is found by the master that the interest of Thomas L. Boykin in all these lands amounts to 41–90.

All that I can do is to direct that a partition be made, and that in the making of this partition the rights of these mortgagees be protected as nearly as possible and practicable, with due regard to the interest of all other parties concerned; but if the result of the attempt at partition should be that the commissioners should recommend that the entire estate be sold because it is impracticable to divide the same and do justice to all the parties, then the question will arise, how shall these mortgagees be paid? By what rule of fairness, justice, and equity can they be paid out of Thos. L. Boykin's share of the money? In the event of a sale, to the DeSaussure mortgage should be applied the 41–90 of what the 823 acres would bring, and to Witte Brothers' mortgage 41–90 of what the 2,000 acres would bring, and to the Armstrong mortgage 41–90 of any other lands that Thomas L. Boykin's interest would cover, that is, the surplus, if any. It is impossible to predict beforehand what will be either the money value of the share of Thomas L. Boykin, or how much territory will be allotted to him, if it is allotted to him in kind; and it does seem to me, therefore, that until the partition is actually made, and the share of Thomas L. Boykin set aside either in land or in money, as the case may be, that the equities of these several mortgagees cannot be adjusted; and having announced the fundamental principles of equity by which the parties should be controlled, it is impossible for the court to go further, but must await the result of the partition order.

In the writ to be directed to the commissioners, it will have to be provided that the principles of this decree as far as practicable may be carried out; that is, the commissioners shall allot to Thomas L. Boykin his share of the land in kind, if practicable,

making that share embrace the 823 acres and the 2,000 acres, if it should amount to that much, or if not the whole, then part of these parcels sufficient to cover his interest; and if it is not practicable to allot to him in kind, and sale should be recommended, then out of the proceeds of that sale the court will have to provide for the payment of these mortgages.

It is therefore ordered, adjudged, and decreed, that the findings of facts and conclusions of law by the master be sustained, and the exceptions to his report be overruled. It is further ordered, that a writ in partition do issue from the clerk of this court, directed to five commissioners, chosen according to established practice, commanding them to go upon this land and view the same, to call to their aid, if necessary, a competent surveyor, and make a partition of the said lands to the parties entitled thereto according to their respective rights and according to the principles of this decree as nearly as it is practicable to carry the same into effect.

Pelzer, Rodgers & Co. and A. B. Rose, trustee, appealed upon the following grounds:

Because, it is respectfully submitted, his honor erred: 1. In that he holds that the mortgage debt held by these defendants bore only seven per cent. interest from the first day of March, 1873. 2. In that he did not hold said debt to bear interest from 1st March, 1873, at the rate of fifteen per cent., the rate expressed on the mortgage and notes. 3. In that he holds that on partition in kind or proceeds of sale, the mortgage of these defendants will constitute a lien only on forty one ninetieths of the land mortgaged. 4. In that he does not hold that the entire tract under mortgage to these defendants, or the proceeds of sale thereof or so much of said land or proceeds of sale as necessary to pay the debt to these defendants, should be set aside as the share of T. L. Boykin in the estate of his father and brothers, if the same can be done without diminishing the share of his cotenants.

The defendant, John A. Armstrong, appealed on the following grounds:

I. Because his honor errs in that he holds that by the record of the mortgage of the defendants, Witte Bros., such record representing said mortgage as embracing two hundred acres, more or less, instead of two thousand acres, more or less, the defendant, John A. Armstrong, a subsequent purchaser for value, had constructive notice of the mortgage of said Witte Bros. for two thousand acres, more or less.

II. Because his honor errs in that he holds that any loss resulting from a defect in the record of the prior mortgage of said Witte Bros. should fall upon the defendant, John A. Armstrong, a junior mortgagee, instead of upon the holders of such defectively recorded mortgage.

III. Because his honor errs in that he holds that the description of the lands covered by the mortgage of Witte Bros. was fixed and definite, and sufficient to charge subsequent purchasers with notice.

IV. Because his honor errs in that he does not hold that any loss resulting from a defect in the record of the prior mortgage of Witte Bros. should fall upon the holders of such mortgage, instead of upon subsequent purchasers without notice, other than that disclosed by the record.

V. Because his honor errs in that he does not hold that the description of the lands covered by the mortgage of Witte Bros. was not sufficient to charge subsequent purchasers with notice, except as to two hundred acres as set forth in the record thereof.

VI. Because his honor errs in that he does not hold that the mortgage of Witte Bros. is void for uncertainty in the description of the lands covered thereby.

VII. Because his honor errs in that he holds that there was due upon the debt secured by the mortgage of Thomas L. Boykin to Louis D. DeSaussure, to January 19, 1891, the sum of $2,598.05.

VIII. Because his honor errs in that he does not hold that the mortgage indebtedness of Thomas L. Boykin to Louis D. DeSaussure was limited to the sum of $6,000, with the interest thereon, and that the same should have been credited with the proceeds of the cotton shipped to Louis D. DeSaussure by Thos. L. Boykin during the fall of 1872.

IX. Because his honor errs in that he holds that there is now anything remaining due and unpaid upon the debt secured by the mortgage of Thomas L. Boykin to Louis D. DeSaussure.

*Messrs. W. D. Trantham* and *J. D. Dunlap*, for J. A. Armstrong, appellant, contended that the DeSaussure mortgage was not shown to be an existing liability for any amount; that there was no testimony to connect the notes given on March 1, 1873, with this mortgage; that these notes were barred by the statute, and a right of action remained only on the mortgage. 18 S. C., 473; 19 *Id.*, 267. If any amount is due on this mortgage, it bears only 7 per cent. interest from December 20, 1872. 33 S. C., 210. The mortgage to Witte Bros. is void for uncertainty in description of the land. Sedg. & Wait Trial Title to Land, 494; 44 Mo., 596; 100 Am. Dec., 333; 3 Rich., 4; 3 Wash. Real Prop., 385; 46 N. H., 337. The only notice of the Witte Bros. mortgage had by this appellant was obtained from the record, and only what that notice contained can bind appellant. Therefore it can have priority only to the extent of 200 acres. 9 Rich. Eq., 496; 10 *Id.*, 149; 22 S. C., 338; 14 *Id.*, 43; 22 *Id.*, 41; 68 Am. Dec., 260; 58 *Id.*, 523; 30 Am. Rep., 250; 12 Iowa, 14; 2 La. Ann., 917; 76 Me., 314; 40 Md., 331; 29 Mich., 162; 21 Minn., 336; 44 Mo., 309; 1 Johns. Ch., 288; 20 Ohio, 261; 10 Vt., 555; 37 Wisc., 449; 4 Kent, 174; Boone Real Prop.. 321; 3 Wash. Real Prop., 320; 2 Pom. Eq. Jur., §§ 649, 653; Jones Mort., 542–551.

*Mr. H. A. DeSaussure*, for Pelzer, Rodgers & Co. and A. B. Rose, trustee.

Under the circumstances of this case, the tract covered by the DeSaussure mortgage should be allotted to T. L. Boykin, if it can be done without diminishing the shares of the other co-tenants, and subjected to the payment of this debt. 1 Strob. Eq., 66; Freem. Cot. & Part., §§ 199–206; 3 Lead. Cas. Real Prop., 63; 33 S. C., 175, 404; Jones Mort., 683; 1 McCord, 85; 2 Bail., 269; 3 McCord, 411. The mortgage intended that interest should be paid at the rate of 15 per cent. until the debt was discharged. Greenl. Evid., § 287.

*Messrs. Buist & Buist* and *J. T. Hay*, for Witte Bros., respondents.

The master and Circuit Judge concurring that the description of land in our mortgage was sufficiently definite to put a purchaser upon proper inquiry as to the real number of acres, this court will not disturb their finding. 16 S. C., 632; 28 *Id.*, 75; 31 *Id.*, 322. The description on the record was sufficient. Tied. Real Prop., 830, 831; 2 Rich., 487; 1 *Id.*, 491; 2 Strob., 378. The point as to uncertainty in description was not raised on Circuit and therefore cannot be considered here. 25 S. C., 436; 27 *Id.*, 339; 8 *Id.*, 256; 32 *Id.*, 86, 277. And the description is not uncertain. Devl. Deeds, §§ 1012, 1013; 2 Rich., 481. If the error as to the number of acres was misleading, the person who left the deed for proper record is not to suffer, but subsequent purchasers. 27 S. C., 90; Gen. Stat., 769; Wade Notice, §§ 152–171; 16 Ohio, 548; 1 Devl. Deeds, §§ 686, 681, and authorities cited; 61 Miss., 597; 146 Mass., 611; 89 Penn., 345; 1 Cranch, 161; 1 Brev., 332. The DeSaussure mortgage can claim only 7 per cent. interest. 16 S. C., 477; 20 *Id.*, 547; 2 *Id.*, 248. The Circuit decree applies the proper equities between all parties in the directions as to partition and sale. Freem. Cot. & Part., 205, 415, 478; 77 Penn., 151; 11 R. I., 364.

February 19, 1892. The opinion of the court was delivered by

Mr. Chief Justice McIver. The object of this action is to obtain partition of certain real estate in the County of Kershaw, which formerly belonged to Burwell Boykin, and was by his will given to his three sons, Thomas L. Boykin, John Boykin, and Eugene Boykin, upon the death of their mother, charged with the payment of certain legacies to their sisters. The mother having died and the two sons, John and Eugene, having died intestate, and the legacies to the daughters having been provided for, the time for partition of the land has arrived, and the purpose now is to obtain partition amongst Thomas L. Boykin, in his own right and as heir at law of his mother and of his two deceased brothers, and the other heirs at law of these parties. There is no contest between the co tenants as to their shares or as to

their right to partition, and it seems to be conceded that the share of Thomas L. Boykin in the land remaining for partition is 41–90 thereof.

The only controversy is between certain mortgage creditors of Thomas L. Boykin. Of these there are three practically, though there seems to have been another mortgage to Charlotte Taylor, assigned to A. H. H. Stuart, which, however, is not represented in this case, and not having been considered by the court below, is not before us. Of the three mortgages which are to be considered, the oldest is a mortgage to Louis D. DeSaussure, which, though assigned to ·the defendants, Pelzer, Rodgers & Co. and A. B. Rose, as trustee, will, for the sake of convenience, be designated as the DeSaussure mortgage. The next in date is a mortgage to the defendants, Witte Bros. The last in date is a mortgage to the defendant, J. A. Armstrong. The DeSaussure mortgage purports to ˙be a mortgage on 823 acres of land, described by metes and bounds. The Witte mortgage purports to be a mortgage on 2,000 acres of land, more or less, likewise described by metes and bounds, which, it seems to be conceded, does not embrace any of the 823 acres covered by the DeSaussure mortgage; but in the record of this mortgage, doubtless through an error of the ʳrecording officer, the quantity of land covered by the mortgage is stated as 200, instead of 2,000 acres, more or less. And the Armstrong mortgage purports to be a mortgage on the undivided interest of Thomas L. Boykin in the lands of Burwell Boykin, deceased. Such other facts as may be necessary to a proper understanding of the questions raised by this appeal may be gathered from the master's reports and the decree of his honor, Judge Hudson, which should be incorporated in the report of this case, as well as from the previous case of *Boykin* v. *Boykin*, 21 S. C., 513.

The Circuit Judge held that the 823 acres covered by the DeSaussure mortgage was not the separate property of Thomas L. Boykin, held by him under a parol gift from his father, as contended for by the present holders of that mortgage; that as to the amount due on that mortgage, the master was right in reducing the rate of interest from 15 to 7 per cent. on the mortgage after the settlement between mortgagor and mortgagee on the 1st

March, 1873, when the balance then due on the mortgage debt was ascertained; that in the partition, equity would require that the 823 acres covered by the DeSaussure mortgage should be allotted to Thomas L. Boykin, so as to render the security of the mortgage available, provided the same can be done without prejudice to the other co tenants and without injury to the other mortgagees; that as to the mistake in the record of the Witte mortgage, the holders thereof are not to suffer by the error of the recording officer, but any loss which may occur by reason of such error must fall upon the subsequent purchaser or creditor. But in this particular case, there being no error in the record as to the boundaries, that was sufficient, notwithstanding the mistake in quantity, to affect subsequent purchasers or creditors with notice, and therefore he concurs with the master in holding that the Witte mortgage, as against Armstrong, is good for the 2,000 acres; that Witte Bros. have an equity to have the 2,000 acres covered by their mortgage, or at least so much thereof as will amount to his share, allotted to Thomas L. Boykin in the partition, provided the same can be done without prejudice to the rights of the other co-tenants and the holders of the senior mortgage to DeSaussure; that, if it is possible, without prejudice to the rights of the other co-tenants, to allot to Thomas L. Boykin the 823 acres and the 2,000 acres, then the DeSaussure mortgage would be a valid lien on 41–90 of the 823 acres, and the Witte mortgage would be a valid lien on 41–90 of the 2,000 acres; that if a sale should be necessary in order to effect partition, then 41–90 of what the 823 acres would bring, should be applied to the DeSaussure mortgage, and 41–90 of what the 2,000 acres would bring should be applied to the Witte mortgage, and 41–90 of what any other lands that Thomas L. Boykin's interest would cover should be applied to the Armstrong mortgage; and that a writ of partition, according to the usual practice of the court, do issue, containing directions to carry out as far as practicable the views above announced.

From this decree each of the mortgage creditors except Witte Bros. appeal upon the several grounds set out in the record, which should likewise be embraced in the report of this case. Without stating these grounds specifically here, we will proceed

to state what we understand to be the several questions presented thereby :

1st. Whether there was error in reducing the rate of interest on the debt secured by the DeSaussure mortgage from 15 to 7 per cent. per annum.

2nd. Whether there was error in holding that if upon partition in kind, the 823 acres be allotted to Thomas L. Boykin as his share, the DeSaussure mortgage would be a lien only on 41–90 thereof.

3rd. Whether there was error in holding that if the land be sold, then only 41–90 of the proceeds of the sale of the 823 acres should be applied to that mortgage.

4th. Whether there was any error in the ruling as to the effect of the mistake in the record of the Witte mortgage.

5th. Whether there was error in not holding that the Witte mortgage was void for uncertainty in the description of the lands covered thereby.

6th. Whether there was error in ascertaining the amount due on the DeSaussure mortgage.

As to the first and sixth questions, which are more questions of fact than of law, we agree to the conclusions reached by the Circuit Judge for the reasons given by him, and do not deem it necessary to add anything to what he has said.

As to the second question, we think there was error in holding that if the 823 acres covered by the DeSaussure mortgage should be allotted to Thomas L. Boykin on the partition as his share of the common property, the lien of that mortgage would extend only to 41–90 of the 823 acres. There seems to be no doubt that at the time these several mortgages were given, Thomas L. Boykin supposed that he had a good title in severalty to all of the land, as the survivor of his two brothers, John and Eugene ; and this doubtless continued to be his impression until the decision of this court in the case of *Boykin* v. *Boykin* (21 S. C., 513, *supra*), was rendered on the 10th of October, 1884. When, therefore, Thomas L. Boykin executed the DeSaussure mortgage, he must be regarded as intending in good faith to give a lien on the whole of the 823 acres, which he supposed at the time he had a full right to do. But when it was

ascertained that Thomas L. Boykin was only entitled to an undivided interest in the whole of the land, which seems to be conceded is the 41–90 thereof, it does not by any means follow that the lien extends only to that proportion of the 823 acres, *after they have been allotted* to Thomas L. Boykin as his share of the whole property. His intention was to give a lien on every foot of the 823 acres, and although that intention may be either entirely or partially defeated by the failure to allot the whole or any part of the 823 acres to Thomas L. Boykin as his share of the common property, yet if the whole or any part of the 823 acres should be allotted to Thomas L. Boykin on the partition as his share of the common property, we see no reason why his intention should not be carried out by extending the lien to such portion of the 823 acres, whether it be a part or the whole, as may be allotted to Thomas L. Boykin as his share of the common property. Indeed, we think the question is practically decided adversely to the view taken by the Circuit Judge in the case of *Young* v. *Edwards*, 33 S. C., 404; for although that was a case of an absolute conveyance by deed, and this is a case of a mortgage, yet we think that the equitable principles upon which that decision rested are equally applicable to the case of a mortgage.

There can be no doubt that where a tenant in common gives a mortgage on a specific part of the common property, describing it by metes and bounds, under a belief that he owned the same in severalty, the mortgagee has an equity to require, when partition is sought by the other co-tenants, that it shall be so made as to allot the specific portion covered by the mortgage as the share of the mortgagor, and thereby save the lien of the mortgage, *provided this can be done without prejudice to the rights of the other co tenants;* and this equity, where there are several successive mortgages, enures to each mortgagee in the order of the dates of the several mortgages. This is upon the maxim, *Qui prior est tempore potior est jure,* as well as upon the well recognized doctrine that where a mortgagor has made several successive sales of portions of the mortgaged premises, and the mortgagee comes for foreclosure, the property must be sold in the inverse order of the sales made by the mortgagor. *Norton* v. *Lewis,*

3 S. C., 25; *Lynch* v. *Hancock*, 14 *Id.*, 66; *Warren* v. *Raymond*, 17 *Id.*, 163. It seems to us, therefore, that the holders of the DeSaussure mortgage have the first equity, of course, subordinate to the rights of the other co-tenants, to require that either the whole of the 823 acres or so much thereof as may be necessary to pay their debt be allotted to Thomas L. Boykin as his share of the common property; and that Witte Bros. have a similar equity to require that so much of the land covered by their mortgage as may be necessary to pay their debt shall be allotted to Thomas L. Boykin as his share of the common property, provided the same can be done without prejudice to the interests of the other co-tenants, and without prejudice to the superior equity of the holders of the senior mortgage. The same principles would apply to the Armstrong mortgage, which being junior to the other two, must take rank in enforcing its equities according to its date.

This brings us to the third question, which is really disposed of by what we have said in considering the second question; for the same equitable principles should apply, and the same priorities be preserved in case of a sale, as in case of a partition in kind, as far as the same is practicable. It seems to us, therefore, that if a sale becomes necessary, the property should be divided, provided the same can be done without prejudice to the interests of the other co-tenants, so that the specific portions covered by the DeSaussure and Witte mortgages may be sold separately, and that the proceeds of the sale of the 823 acres, or so much thereof as may be necessary to pay the balance due on the DeSaussure mortgage, provided the same does not exceed the share of Thomas L. Boykin in the common property, be applied to the extinguishment of the DeSaussure mortgage, and that if any balance should then remain due to Thomas L. Boykin, so much of the preceeds of the sale of the property covered by the Witte mortgage as may be necessary shall be applied to the satisfaction of the debt secured by the Witte mortgage, provided the amount so applied shall not exceed the share of Thomas L. Boykin in the common property; and if there should be still any balance due to Thomas L. Boykin on account of his share of the common property, such balance to the

extent necessary for the purpose shall be applied to the satisfac-
tion of the Armstrong mortgage, and the remainder, if any, shall
be paid to Thomas L. Boykin.   If, however, it shall prove to be
impracticable for the property to be sold in parcels as above indi-
cated without prejudice to the rights and interests of the other
co-tenants, whose superior rights must in all contingencies be
respected, it will then be for the court to devise some other scheme
for the preservation, as far as possible, of the respective rights of
the several parties, upon the principles above indicated as far as
they can be practically applied.   It follows, therefore, that the
judgment of the court below must be modified in this respect so
as to conform to the principles herein announced.

As to the fourth question, we agree with the Circuit Judge in
the conclusion which he has reached, that the mistake in the rec-
ord of the Witte mortgage, so far as the number of acres
is concerned, does not affect its validity as against the
Armstrong mortgage, or limit its lien to the 200 acres
mentioned in the record, but that it is a valid lien, prior to that
of Armstrong, on all the land found within the metes and bounds
set out in the original mortgage as well as in the record thereof.
It will be observed that the only mistake in the record of this
mortgage is in the number of acres supposed to be contained
within the boundaries set forth—the number stated in the record
being 200 acres, "more or less," while in the original mortgage
the number stated is 2,000 acres, "more or less"—and the pre-
cise question presented is whether *such a mistake* invalidates the
lien or limits it to the number of acres mentioned in the record,
so far as the rights of subsequent purchasers or creditors are con-
cerned.   The question is not as to the effect which *any mistake*
in the record of a mortgage may have; as, for example, a mis-
take in stating the amount of the debt secured by the mortgage
in the record, as $200, when in the original it is $2,000, and
hence such a question does not arise in this case, and will not
therefore be considered.

Confining ourselves to the question presented in the record;
we think it clear that a mere mistake in the record of a mortgage
as to the number of acres covered by it, especially when the num-
ber of acres there stated, as in this case, is accompanied by the

words, *"more or less,"* cannot possibly have the effect claimed by the appellant Armstrong. The addition of those words shows very plainly that the number of acres stated is a very unimportant, and in most cases wholly immaterial, element in the description of the land intended to be conveyed or affected by the lien of a mortgage. This has long been settled in this State. As far back as 1818, Nott, J., said, in *Executors of Peay* v. *Briggs* (2 Mill Con. R., 98), recognized in the more recent case of *Bratton* v. *Clawson* (3 Strob., 130), "That where a person purchases land by metes and bounds, represented to contain a certain number of acres *'more or less,'* he is entitled to recover all the lands within the prescribed limits, whatever the number of acres may be. It must be apparent from the words 'more or less' that the metes and bounds are to govern and not the number of acres." In *Gourdin* v. *Davis* (2 Rich., 481), O'Neall, J., said: "I deny that quantity has ever been regarded as a certainty in a deed. It is altogether too uncertain a matter to have such an effect." In *Baynard* v. *Eddings* (2 Strob., 374), it is said: "It is seldom that quantity is of much weight in a question of location." And when we find that in *Fulwood* v. *Graham* (1 Rich., 491), a grant was so located as to cover four times the number of acres stated therein, and that in *Sturgeon* v. *Floyd* (3 Rich., 80), a plat annexed to a grant representing the land as containing 14.900 acres was so located as to cover 136,000 acres, we must conclude that the number of acres stated in a deed or other like paper, especially with the superadded words "more or less," is a very immaterial element of description, and hence an error in stating the number of acres in the Witte mortgage, as it was recorded, cannot affect its validity.

As to the fifth question, it would be sufficient to say that, so far as we can perceive, no such question was made in the Circuit Court, and therefore the question is not properly before us. But if it were, we are not furnished with any evidence which would enable us to say that there was any such uncertainty in the description of the land covered by the Witte mortgage as would render that mortgage void, especially in view of the fact that both the master and Circuit Judge seemed to think that such description was sufficient to counteract any

erroneous impression which might have been formed from the error in the record as to the number of acres.

The judgment of this court is, that the judgment of the Circuit Court be modified as herein indicated, and that the case be remanded to that court for such further proceedings as may be necessary.