SIMPSON-FELL OIL COMPANY ET AL V. STANOLIND OIL & GAS COMPANY ET AL.

No. 6995. Decided March 1, 1939.
Rehearing Granted January 22, 1941.
Second Motion Overruled March 12, 1941.
(125 S. W., 2d Series, 263.)
(146 S. W., 2d Series, 723.)

*Edwin Lacy, Angus Wynne* and *Jack E. Price,* all of Long-view, *Fred V. Hughes,* of Tyler, *George Otey,* of Armore, Okla., *Harris & Harris,* of Austin, for plaintiffs in error.

Where a cotenant sells his interest in property, his cotenants who are not concerned in the sale are not to be prejudiced by the conveyance made by their cotenant to specific parcels and their titles remain unaffected thereby. The conveyances pass only such title in the parcels conveyed as the contenants could convey. Broom v. Pearson, 98 Texas 469, 85 S. W. 790; Rutherford v. Stamper, 60 Texas 447; Arnold v. Cauble, 49 Texas 527; Thomas v. Southwestern Settlement & Dev. Co., 132 Texas 413, 123 S. W. (2d) 290.

*Turner, Rodgers, Winn & Sellers, Dwight Simmons, Lewis Dabney, C. R. Winn, Thompson, Knight, Baker, Harris, Wright & Weisberg,* all of Dallas, *Walter C. Clemons, John Broughton,* and *John E. Green, Jr.,* all of Houston, *Brachfield & Wolfe,* of *Harris & Harris,* of Austin, for plaintiffs in error.

While a cotenant has no power to divest his coowners by selling a specific part of the common property, yet a court of equity will protect such a purchaser, if it can be done without injury to the other owners, by setting apart to the vendee of the cotenant the particular tract bought. Furrh v. Winston, 66 Texas 522; Gosch v. Vrona, 227 S. W. 219; Lasater v. Ramirez, 212 S. W. 935.

MR. JUDGE GERMAN, of the Commission of Appeals, delivered the opinion for the Court.

On the 26th day of August, 1908, R. H. Rowland and wife conveyed to William E. Howell of Clark County, Illinois, a tract of 258 acres of land, a part of the William Tyndale Survey in Gregg County, Texas. The recited consideration was $1500.00 in cash paid by William E. Howell. At the time William E. Howell and Mary E. Howell were living together as husband and wife. In August, 1911, Howell and wife conveyed to L. A. Jeter 13 1/4 acres of the tract, leaving 244 3/4 acres, but in exchange therefor Jeter conveyed to William E. Howell

5 1/2 acres of the Crosby Survey adjoining the Tyndale Survey. This made a total of 250 1/4 acres standing in the name of William E. Howell, and for convenience it will be referred to as the Howell 250 acres.

Mary E. Howell died in Illinois in 1927, leaving three adult children and a grandson, Jack Howell, son of Carrol B. Howell, deceased, as her heirs.

On November 1, 1929, William E. Howell and F. M. Fonville executed a contract of purchase and sale of the 250 acres of land, which is referred to as 258 acres, for a recited consideration of $2500.00 to be paid in cash. In consummation of the purchase and sale of this land under the provisions of the contract of November 1, 1929, the attorney for Fonville called for the execution of deed by William E. Howell and wife to Fonville. Upon being informed that the wife of William E. Howell was then dead, and being further informed that Jack Howell, a minor, was one of the surviving heirs of Mary E. Howell, the attorney then caused to be executed on November 27, 1929, and delivered to F. M. Fonville, a general warranty deed by William E. Howell and his three adult children conveying an undivided 7/8th interest in the fee title to the 250 acres of land. On the same date he caused to be procured a guardian's deed executed by William E. Howell as guardian of Jack Howell, the minor, conveying to Fonville an undivided 1/8th interest in the 250 acres. In the execution of this latter deed, William E. Howell acted as guardian appointed under the laws of the State of Illinois and in pursuance of orders made by the probate court of Clark County in that state.

Under the two foregoing mentioned conveyances Fonville set up claim to the entire 250 acres.

On December 29, 1930, Fonville and wife executed and delivered to D. A. Burris an oil, gas and mineral lease upon the entire 250 acres, which instrument purported to cover the entire mineral estate.

On January 2, 1931, Burris assigned this lease to Simms Oil Company in so far as it affected the south 100 acres of the 250-acre tract, and on February 18, 1931, Simms Oil Company assigned to Stanolind Oil & Gas Company a 1/2 interest in said lease as to said 100 acres.

On January 2, 1931, Burris assigned to the Gulf Production Company the above mentioned lease in so far as it affected the 100 acres immediately north of and adjoining the 100 acres assigned to Simms Oil Company.

On February 4, 1931, Burris assigned to the Magnolia Pe-

troleum Company said lease in so far as it affected the remaining portion of the said 250 acres, it being referred to as 58 acres, but in fact containing only about 50 acres.

All of the above mentioned assignees went into possession of the respective tracts assigned to them and began the production of oil from the land.

Under guardianship proceedings instituted in the probate court of Smith County, Texas, in the year 1931, C. E. Florence was appointed guardian of the estate of the minor, Jack Howell, who resided in Clark County, Illinois, and under proper orders regularly entered said Florence as guardian on July 28, 1931, executed to Leland Fikes a deed to an undivided 1/8th interest in and to the said 250 acres of land, the consideration being $30,000.00 in cash.

On July 31, 1931, Leland Fikes executed to Magnolia Petroleum Company an oil, gas and mineral lease on the North 50 acres, the description in the lease being hereinafter fully set out.

Thereafter, on October 6, 1931, Leland Fikes executed an oil, gas and mineral lease to Will H. Smith, Simpson-Fell Oil Company and Simon Westheimer upon all his "right, title and interest, same being one-eighth," in and to all of said 250 acres, less the tract theretofore leased to Magnolia Petroleum Company on July 31, 1931. The parties agreed to consider the land leased as containing 200 acres. Westheimer assigned his interest in this lease to Simpson-Fell Oil Company and Will H. Smith.

Simpson-Fell Oil Company and Will H. Smith filed this suit in the District Court of Gregg County December 14, 1931, against Gulf Production Company, Simms Oil Company, Stanolind Oil & Gas Company and F. M. Fonville and wife. The suit was for partition of the oil, gas and minerals in and under the 250 acres of land, save and except that part leased by Leland Fikes to Magnolia Petroleum Company on July 31, 1931. It is alleged that plaintiffs owned an undivided 1/8th part of said oil, gas and minerals and defendants owned the remaining 7/8th part. The petition was amended on February 27, 1933, and Leland Fikes was made an additional party defendant. The suit remained one for partition of the oil, gas and minerals in the south 200 acres out of the 250-acre tract, but there was an alternative plea that if defendants denied the title of plaintiffs, then in such event plaintiffs sued in trespass to try title to recover a 1/8th undivided interest in the oil, gas and minerals in said 200 acres.

Mrs. Fonville died after the filing of the original petition and

her heirs were substituted as defendants. Leland Fikes filed a cross action impleading W. E. Howell, C. E. Florence and the First National Bank of Gilmer, the purpose being to protect himself to the extend of the $30,000.00 paid by him for the interest of the minor under the guardianship proceeding in Smith County. Fikes also impleaded the Magnolia Petroleum Company, seeking to reform the oil, gas and mineral lease executed by him to that company on July 31, 1931. He also sued F. M. Fonville and the heirs of Mrs. Fonville in trespass to try title to an undivided 1/8th interest in the land.

The trespass to try title action between Fikes and Fonville and his children was severed from the original cause, and in February, 1934, judgment was entered in that cause in which it was decreed that Fikes take nothing as against the defendants, so far as the fee simple title to the 250 acres was concerned. The defendants took title to same subject to outstanding oil and gas leases. The defendants, Simms Oil Company, Stanolind Oil & Gas Company, and Gulf Production Company were not parties to that judgment, nor were the plaintiffs Simpson-Fell Oil Company and Will H. Smith.

The controversy between Fikes and the Magnolia Petroleum Company was severed, and in February, 1933, judgment was entered in that cause to the following effect:

"It is therefore ordered, adjudged and decreed that the oil, gas and mineral lease made and executed by the plaintiff Leland Fikes to Magnolia Petroleum Company, July 31, 1931, recorded in Volume 96, page 450, Deed Records of Gregg County, Texas, be and the same is hereby reformed as that thereby it conveys unto Magnolia Petroleum Company the oil, gas, mineral and leasehold estate in the terms and by the covenants of said lease provided in and to the one-eighth fractional undivided interest claimed by the plaintiff Leland Fikes lying within the north 58 acres of land described in the said deed from C. E. Florence, guardian of Jack Howell, to Leland Fikes, dated July 28, 1931, recorded in the Deed Records of Gregg County, Texas."

Neither defendants Gulf Production Company, Simms Oil Company and Stanolind Oil & Gas Company, nor plaintiffs Simpson-Fell Oil Company and Will H. Smith were parties to that judgment.

The result of these proceedings left the suit with Simpson-Fell Oil Company and Will H. Smith as plaintiffs and Simms Oil Company, Stanolind Oil & Gas Company, Gulf Production

Company, F. M. Fonville and children, C. E. Florence, William E. Howell, and the First National Bank of Gilmer as defendants. The three companies first named are the principal defendants and will hereafter be referred to as such. The nature of the suit was to partition the oil, gas and minerals in and under the south 200 acres only of the 250-acre tract, plaintiffs claiming an undivided 1/8th interest in same, with allegation that defendants were the owners of the remaining undivided 7/8th interest. There was a plea in the alternative of trespass to try title, but as we construe the pleading the case was primarily one for partition. The alternative plea was merely to settle, preliminary to partition, the question of title, in the event it was contested by defendants, and there is nothing to indicate an intention of abandoning the partition merely because defendants might contest the title of plaintiffs of the 1/8th undivided interest.

Judgment in the trial court was in favor of plaintiffs for an undivided 1/8th interest in the oil, gas and minerals in and under the south 200 acres of the 250-acre tract of land, and for a money judgment for the value of 1/8th of the oil produced from said 200 acres, less expenses of production. The lease by Fikes to Simpson-Fell Oil Company and others dated October 6, 1931, was decreed to be valid and binding as to an undivided 1/8th interest in the oil, gas and minerals in and under said south 200 acres of land. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment in favor of defendants. 85 S. W. (2d) 325.

Several interesting and difficult questions have been presented in briefs and arguments of counsel. Before discussing these questions, we will briefly dispose of certain matters concerning title.

Apparently all parties proceeded upon the idea that the minor, Jack Howell, had inherited a 1/8th undivided interest in this property, on the theory that it was community property of William E. Howell and wife, Mary E. Howell. Upon the trial of the case, however, it developed that the land was not community property, but that of the $1500.00 consideration $900.00 had been paid by Mary E. Howell out of her separate fund. This having been found true, the interest of the minor by inheritance from Mary E. Howell was an undivided 3/20th interest of an undivided 1/8th interest. The Court of Civil Appeals makes the statement in its opinion that there was an outstanding 1/20th interest in the minor. We do not concur in this

statement, so far as the disposition of this case upon the record here is concerned. The legal title stood in William E. Howell. The deed which was executed by him and his adult children purported to convey a 7/8th undivided interest. We think this record does not disclose that Fonville had any notice of a claim to the land by the minor on the theory that Mrs. Howell had paid a part of the purchase money. Apparently all parties proceeded upon the assumption that his interest was one based upon the theory that Mary E. Howell had a community interest. It is our conclusion, therefore, that so far as the parties now before the court are concerned the deed by William E. Howell and his adult children conveyed to Fonville a 7/8th undivided interest. The plaintiffs in their various petitions admitted that defendants had title to a 7/8th interest.

■ Defendants admit the invalidity of the deed executed by William E. Howell as guardian of date November 27, 1929. They contend, however, that even though it were void so far as the minor was concerned, it nevertheless passed all title which Howell had, invoking in this connection the rule announced in Millican v. McNeill, 102 Texas 189, 114 S. W. 106, 21 L. R. A. N. S. 60, 132 Am. St. Rep. 863, 20 Ann. Cas. 74; Rutherford v. McGee, 241 S. W. 629, and other similar cases. If Howell had in fact owned this 1/8th interest then the rule announced in the cases mentioned would be applicable. It rests upon estoppel. In those cases the grantor had represented that the property attempted to be conveyed belonged to the estate which he purported to represent. He was held to be estopped to later claim that it belonged to himself personally. In this instance Howell did not in fact own this 1/8th interest, but purported to convey it on behalf of the real owner. The deed being void, passed no title. He has not attempted to claim the property belonged to him, hence the rule of estoppel announced in the cases mentioned does not apply, except as to his life estate, which undoubtedly passed to Fonville and those holding under him.

The Honorable Court of Civil Appeals in reversing and rendering judgment in favor of defendants for all of the oil, gas and minerals in the 200 acres in controversy, applied the equitable rule often recognized where one tenant in common has conveyed a specific portion of a tract of land, and it has been found that the part conveyed did not exceed in value the interest of the conveying tenant in the whole tract, so that the non-conveying tenants were not prejudiced thereby; in which case the conveyance has been upheld. This rule has been so many times applied in cases involving land that we do not deem it neces-

sary to undertake to restate the same. A discussion of that rule here would involve difficulties because of the fact that Burris, who first made assignments affecting specific portions of the 250-acre tract, held only lease of the oil, gas and minerals. However, we do not find it necessary to determine whether or not, from the record before us, the attempted partition, so far as the south 200 acres is concerned, can be equitably upheld from the standpoint of defendants having affirmatively shown that same does not exceed in value their interest in the whole. We think there has been such a course of dealing with reference to the balance of the tract by the other cotenant as to amount to an undoubted ratification of the action of Burris in assigning the oil, gas and minerals in the south 200 acres.

██ Prior to the time Leland Fikes acquired the undivided 1/8th interest in the 250 acres under guardian's deed, Fonville and wife had executed oil, gas and mineral lease to Burris, and he in turn had assigned this lease to Simms Oil Company, Gulf Production Company and Magnolia Petroleum Company. Simms Oil Company had assigned a 1/2 interest in the south 100 acres to Stanolind Oil & Gas Company. At the time, then, when Fikes acquired his 1/8th undivided interest on July 28, 1931, he became a tenant in common with the above mentioned companies so far as the oil, gas and minerals were concerned. The lease by Fonville and wife to Burris and the various assignments by Burris were not void. As between the parties they were valid and binding according to their terms. As to Fikes they were subject to his right to be protected to the extent and value of his 1/8th undivided interest in the whole, in an equitable adjustment of the relative rights of the other parties, as between himself and them, and as between themselves. His right was subject to their correlative equitable rights, which could be adjusted only in a proceeding involving all of the oil, gas and minerals in the whole common property, except to the extent that by mutual agreement or by acts amounting to ratification or estoppel, the parties may have adjusted same themselves.

█ It is well settled that when conveyance of a specific part of common property has been made by one tenant in common, the grantee has a right to have the whole property, and all interested parties, brought into a partition proceeding in order to determine whether or not in an adjustment of the equities of all parties he shall be entitled to receive from his grantor's interest the specific portion conveyed to him. Maverick v. Burney, 88 Texas 560, 32 S. W. 512; Ferguson v. Stringfellow, 47

Texas Civ. App. 449, 106 S. W. 762 (Writ refused) ; Highland Park Mfg. Co. v. Steele, 235 Fed. 465; Barnes v. Lynch, 151 Mass. 510, 24 N. E. 783; Warner v. Eaton, 78 N. H. 515, 102 Atl. 535; Lovett v. Lovett, 93 Fla. 611, 112 So. 768; Bigelow v. Littlefield, 52 Me. 24, 83 Am. Dec. 484; Gilpin v. Brown, 268 Pa. 398; 112 Atl. 124; Luther v. Luther, 157 N. C. 499; 73 S. E. 102.

■ While it is true that as between Fikes and the various parties holding under Burris, Fikes had the right to upset the equities existing between them, if necessary, in order to fully protect his own rights, nevertheless the other parties had a right to have their equities protected in the order of their purchases, if that could be done. For instance, as between Simms Oil Company and Gulf Production Company on the one hand and Magnolia Petroleum Company on the other, the first two had a right to have their assignments made good in an adjustment with Fikes out of the 7/8th interest of Burris before the assignment to Magnolia Petroleum Company by Burris could be considered. This was one of the correlative rights which they had a right to have preserved, provided Fikes could be fully protected after this was done. Moonshine Company v. Dunman, 51 Texas Civ. App. 159, 111 S. W. 161; Kennedy v. Boykin, 35 So. Car. 14 S. E. 809, 28 Am. St. Rep. 838; Harrison Oil Co. v. Sherman, 66 S. W. (2d) 701 (Writ refused).

The situation thus stood when Fikes executed his first lease to Magnolia Petroleum Company July 31, 1931. If suit had then been brought for partition, and the court had ascertained that the oil and gas might be equitably partitioned in kind, it would have been the duty of the court to allot defendants the south 200 acres covered by their leases and to have allotted to Fikes his entire 1/8th interest in the north 50 acres, even if it resulted in Magnolia Petroleum Company, as assignee under the Burris lease, getting nothing. Fikes, when he purchased the interest of the minor, had full knowledge of the existence of the lease by Fonville to Burris and agreed to take the land "as is." In the application of the guardian for an order of sale it is recited "that said land is reputed to be mineral land and is valuable for oil and gas purposes, and that various parties own an oil and gas lease upon said 249-acre tract of land, and will not develop said land for oil and gas purposes with the minor's outstanding interest in said lease." Magnolia Petroleum Company when it took the lease from Fikes to the north 50 acres had full knowledge of the prior lease by Fonville to Burris and the prior assignments, because it held under the Burris lease. When

therefore Fikes obtained his conveyance he was confronted with this situation: He could have ignored all prior transactions, asserting his right in the whole 250 acres, in which event Simms Oil Company, Stanolind Oil & Gas Company and Gulf Production Company would have had equities superior to the Magnolia Petroleum Company. He could elect to recognize or ratify the acts of his cotenants, and especially could he recognized and acquiesce in the rights of Simms Oil Company, Stanolind Oil & Gas Company and Gulf Production Company, by selecting and accepting the remaining 50 acres of the tract as his equitable part, or from which he would realize his equitable interest.

The evidence as to the relative value of the north 50 acres is such as to justify the conclusion that when Fikes leased to Magnolia Petroleum Company he had good reason to believe that this tract was more than sufficient in value to equal the value of his 1/8th interest in the whole tract. It is shown that at the date of trial there were four producing oil wells on this 50-acre tract. There were six producing wells on the Simms 100 acres. The evidence does not disclose the number of wells on the Gulf Production Company 100 acres, but the evidence with reference to production from that tract would indicate that there were possibly one or two more wells than on the Simms 100 acres. While the testimony of Housch and Moore is very general, and shows that they did not have accurate knowledge of all the conditions, yet there are statements by them to the effect that the Magnolia 50 acres was as good, on an acreage basis, as the balance of the tract. According to one witness, the 50 acres was "right on the strike line."

■ The rights of Fikes as regards leases and conveyances by his cotenants of specific portions of the common property are fully discussed in the recent case of Thomas v. Southwestern Settlement and Development Company, 132 Texas 413, 123 S. W. (2d) 290. That decision is wholly in accord with the proposition that he was equitably bound not to deal with the common property in a way that would impair or injuriously affect the equities of his cotenants prior to an adjustment of the rights of all parties in a partition proceeding. It is definitely settled that a cotenant so situated "may by a course of dealing with the balance of the common property, in which he disregards the equitable rights created by his cotenants' conveyance, be held to have acted in recognition and ratification thereof." Harrison Oil Co. v. Sherman, supra; Cook v. I. & G. N. R. R. Co., 3 Texas Civ. App. 125, 22 S. W. 1011; Jefferson Imp. Co. v. Dupoyster, 112 Ky. 792, 66 S. W. 1048, 1050; Barnes v.

Lynch, supra; Highland Park Mfg. Co. v. Steele, supra; Pellow v. Arctic Mining Co., 164 Mich 87, 128 N. W. 918, 47 L. R. A., 573; Ann. Cas. 1912 B, 827; Young v. Edwards, 33 So. Car. 404, 11 S. E. 1066, 10 L. R. A. 55, 26 Am. St. Rep. 689; Kennedy v. Boykin, supra; Mee v. Benedict, .98 Mich. 260, 57 N. W. 175, 22 L. R. A. 641, 39 Am. St. Rep. 543.

■ Under the situation as it stood when Fikes made his lease to Magnolia Petroleum Company he had a right to recognize the assignments made by his cotenants and to claim his interest in the oil, gas and minerals against such assignments in the inverse order of their execution; that is, to recognize the first assignments made by his cotenant and to claim only against the last assignment;—that being sufficient to satisfy his interest. That appears to have been exactly what he attempted to do, as will hereinafter be shown. If not, then he attempted to make an ex parte partition by leasing all of the north 50 acres. Viewed from either standpoint, the holdings in the cases cited are in principle decisive of this question of ratification.

The lease by Fikes to Magnolia Petroleum Company of July 31, 1931, was as follows:

"Lessor in consideration of Ten and No/100 ($10.00) Dollars, and other good and valuable consideration, in hand paid, of the royalties herein provided and of the agreements of Lessee herein contained, hereby Grants, Leases and Lets exclusively unto Lessee for the purpose of investigating, exploring, prospecting, drilling and mining for and producing oil, gas and all other minerals, laying pipe lines, building tanks, power stations, telephone lines and other structures thereon to produce, save, take care of, treat, transport and own said products and housing its employees *the following described land* in Gregg County, Texas, towit:

"Fifty-eight (58) acres of land off of the North end of a 258 acre tract of land, a part of the Tyndale Headright Survey and the Crosby Survey, Gregg County, Texas, West of the town of Longview, which said 258 acre tract of land is composed of two (2) parcels as follows:

"Tract No. 1. Some 245 acres, more or less, a part of the Tyndale Headright Survey.

"Tract No. 2. Some 5 1/2 acres out of the Crosby Survey, which said tract of land is described and set forth in an Oil and Gas lease dated December 29, 1930, by and between F. M. Fonville and Ida M. Fonville, Lessor, and D. A. Burris, Lessee, said lease being recorded in Book 64, page 129, Deed Records of Gregg County, Texas, reference to which is here made for

further description of the land herein leased and said land hereby leased is the selfsame and very land covered by and included in a certain assignment of Oil and Gas Lease dated February 4, 1931, from D. A. Burris, Lessee, to Magnolia Petroleum Company, said assignment being recorded in Vol. 66, page 396, Deed Records of Gregg County, Texas, reference to which is here made for a full description of the land herein leased, it being the intention to include all land owned or claimed by lessor in the above described land, whether correctly described or not."

Viewing this instrument in the light of the facts and circumstances that existed at the time of its execution, we have no doubt that the effect of same was to lease the entire 50 acres, and not merely a fractional interest in same. Germany et al. v. Turner et al., 132 Texas 491, 123 S. W. (2d) 874, decided January 25, 1939. The instrument contains nothing which indicates that he intended to lease merely his fractional 1/8th interest in this 50 acres. On the contrary, the express language is to the contrary. There were good reasons why Fikes should have intended to ratify the prior lease as to the south 200 acres, and appropriate the north 50 acres as his proportionate interest. In the first place, as indicated above, he was certainly justified in believing that it more than equalled the value of his interest. In the next place, he could thereby avoid possible litigation and complication with the assignees of Burris as to the south 200 acres, because they could not complain if he saw fit to recognize their rights to this specific portion of the common tract. On the other hand, it was manifestly to the interest of the Magnolia Petroleum Company to acquire this tract as representing the interest of Fikes in the whole tract. That company was charged with knowing that if it were equitably necessary to exhaust the 7/8th interest of Fonville in order to make good the assignments to Simms Oil Company and Gulf Production Company of the south 200 acres, this would be done, leaving it holding a barren assignment from Burris as to the north 50 acres. Thus by taking a lease from Fikes in terms such as are set out above, it had all to gain and nothing to lose.

As to defendants it makes no difference that Fikes later obtained a judgment reforming the lease to Magnolia Petroleum Company. The necessity for a suit for reformation shows the lease was susceptible of the construction that it leased the entire 50 acres and not merely a fractional interest therein, and that Magnolia Petroleum Company was asserting that it did so. It is obvious that if the south 200 acres was merely equivalent

to the 7/8th interest of Fonville and Burris, then as to the north 50 acres Magnolia Petroleum Company got nothing by the assignment from Burris as against defendants. Under such a condition Fikes would have been entitled to all the north 50 acres, and had a right to appropriate it as against Magnolia Petroleum Company. The result of what has been done by Fikes, however, is to place the Magnolia Petroleum Company in full possession of all the north 50 acres, with right to take all of the oil and gas therefrom. As to defendants, Magnolia Petroleum Company could not have equitably gotten such full interest, to their prejudice, except as a result of what was done by Fikes, and as to defendants he will be charged with the value of the whole 50 acres. Having created such situation, he could not escape its consequences by later leasing an undivided 1/8th interest in the south 200 acres to plaintiffs. He should not be allowed to profit at the expense of his cotenants. Mee v. Benedict, supra.

But plaintiffs argue that they are in better position than Fikes. Obviously, in our opinion, they are not. They had full knowledge of the lease to Magnolia Petroleum Company and its plain terms. We call attention to the fact that when plaintiffs acquired their lease from Fikes, it contained a description as follows: "All my right, title and interest, the same being one-eighth, in the following described property:" Then follows a description of the 250-acre tract. The instrument continues: "Save and except that *property* heretofore leased by Leland Fikes to Magnolia Petroleum Company under date July 31, 1931, and filed for record on August 3, 1931, File No. 20087, in the office of the County Clerk of Gregg County, Texas, to which reference is here made."

Under this instrument plaintiffs got no greater right than Fikes himself had. Wells v. Heddenberg, 11 Texas Civ. App., 3, 30 S. W. 702; Finley v. Dubach, 105 Kan. 664, 185 Pac. 886; Mee v. Benedict, supra. They knew they were purchasing into a cotenancy relationship, subject to the equities of all interested parties, and, as they were holding under Fikes, they also took their title "as is." Fikes could not recover against defendants, neither can plaintiffs, and it makes no difference whether the action be regarded as one for partition or one in trespass to try title only.

This opinion is not intended to affect the rights, if any, of plaintiffs and Leland Fikes, as between them and Magnolia Petroleum Company, touching the north 50 acres.

For the reasons stated herein, the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court March 1, 1939.

ON MOTION FOR REHEARING.

PER CURIAM:

■ While adhering to the general principles of law announced in the original opinion in this case, reported in (this volume 158) 125 S. W. (2d) 263, the Court if of the opinion that there was error in affirming judgment of the Court of Civil Appeals which reversed and rendered judgment of the district court. This is based on the conclusion that it was not shown as a matter of law that there had been such a course of dealing on the part of Leland Fikes and those holding under him with reference to the 50-acre tract as amounted to a "ratification of the action of Burris in assigning the oil, gas and mineral leases in the south 200 acres." The Court is of the opinion that an issue of fact is presented in this respect, and that upon this theory the case was not fully developed.

■ The Court is further of the opinion that in determining the question of whether or not Fikes at the time he made his lease to Magnolia Petroleum Company could have fully satisfied his interest out of the 50 acres, and upon the question of whether or not a recovery by plaintiffs of their undivided interest in the south 200 acres will injuriously affect or impair the equitable interests of defendants as to said 200 acres, the burden of proof is upon the defendants. To this end it is suggested that Fikes, the Magnolia Petroleum Company, and all parties interested under them in the 50 acres be made parties to this action.

The motion for rehearing is granted, and the judgments of the Court of Civil Appeals and district court are both reversed and the cause is remanded to the district court for a new trial.

Opinion delivered January 22, 1941.

Second motion for rehearing overruled March 12, 1941.