# Laws et al. v. Sturgill et al.

# Sturgill v. Piney Oil & Gas Co. et al.

May 2, 1941.

Harman, Francis & Hobson for Laws and Sutphin.

Wheeler & Wheeler and C. B. Wheeler for Willie B. Sturgill.

A. B. Combs for Piney Oil & Gas Co. and Columbian.

Z. Wells for Warfield Natural Gas Co.

OPINION OF THE COURT BY JUDGE FULTON—Reversing in part and affirming in part.

In the year 1901, Susan Sturgill, a widow, and her five children, Beverly, Myrtie, Joseph, Melvin and Willie B., became the owners of a tract of land in Floyd County containing about 150 acres, each owning an undivided one-sixth interest. In the year 1912, all except the appellee, Willie B. Sturgill, transferred their oil, gas and mineral rights to a predecessor in title of

appellants, Laws and Sutphin, now the owners of those rights. After this sale of the mineral rights by five of the six co-owners, Bev Sturgill purchased the undivided interests of his brothers, Joe and Melvin, in the surface, thereby becoming the owner of an undivided one-half interest in the surface. In the year 1923 a division of the land was effected between the joint owners, Susan, Myrtie, Bev and Willie; about one-half of it was conveyed by the other joint owners to Bev, who owned three parts in the surface; about one-sixth of it was conveyed to Myrtie and about one-third of it was conveyed to the mother, Susan, and Willie jointly. A few days after the execution of these partition deeds, the mother, Susan, executed a deed to Willie in which she conveyed to him the land which they had obtained jointly in the partition but in which she reserved a life estate.

On August 9, 1929, appellants, Laws and Sutphin, owners of five-sixths undivided interest in the mineral rights, executed an oil and gas lease to Piney Oil and Gas Company. Prior to this, Willie, in the year 1925, had executed an oil and gas lease on the 50 acres allotted to him and his mother and upon the expiration of this lease on May 16, 1934, executed another lease to Warfield Natural Gas Company. The gas companies took the position that the partition between the fee owner, Willie Sturgill, and the surface owners, Susan, Bev and Myrtie, was effective as far as it went as a partition of the minerals, including the oil and gas, and that inasmuch as the 50-acre tract had been conveyed to Willie and his mother jointly, this operated to give him an undivided one-half interest in the minerals, including the oil and gas, in this 50-acre tract, and to give to Laws and Sutphin, purchasers of the minerals from his mother, the other one-half interest in same as to the 50-acre tract and to give to Laws and Sutphin the minerals, including oil and gas, on the balance of the tract amounting to approximately 100 acres.

Proceeding on this theory, Piney, lessee from Laws and Sutphin, drilled two wells on the balance of the tract, one of these wells being on the surface owned by Myrtie and the other on the surface owned by Bev. These wells were drilled at an expense of approximately $25,000.

Later the two gas companies, Piney and Warfield, proceeding upon the theory that together they had a

good lease on the property, inasmuch as Susan had sold her minerals to appellants' title under which Piney held a lease and as Willie owned a half interest in the oil, gas and minerals in the 50-acre tract which he had leased to Warfield, agreed to operate jointly on the tract owned by Willie and his mother, Susan. They therefore contributed equally to the drilling of a well on the 50-acre tract allotted to Susan and Willie with the understanding that the royalties from this well should be paid one-half to appellants and one-half to Willie.

After the completion of the latter well Willie filed this action against appellants, Laws and Sutphin, and against the appellees, Piney Oil and Gas Company and Warfield Natural Gas Company, claiming that he was entitled to one-sixth of the oil and gas recovered from the first two wells on the 100-acre tract, as well as one-sixth from the last well, and sought to have the lease executed to Warfield cancelled. An amended petition was later filed in which it was alleged that there had been no division of the oil and gas and that when the division of the surface between the joint owners was effected there was a division line between the part allotted to him and the part allotted to his mother in the division, although the conveyance was to them jointly, and that the well drilled by Warfield was on the part laid off to him in the division and that if he was not entitled to a one-sixth interest in all the wells then he was entitled to the entire royalty from the Warfield well, drilled on what he alleged to be was his part.

Considerable testimony was introduced, to establish that when the joint owners agreed on a division they had in mind a dividing line separating the part allotted to Susan from the part allotted to Willie, although this line was not marked out on the ground. This evidence was to the effect that the deed was made to Susan and Willie jointly merely to save the execution of an extra deed since Susan was going to live with Willie and was going to leave her part to him. Willie testified that when he leased the land to Warfield he told its agent that his part was only 25 acres and that he pointed out to the agent the dividing line between his part and his mother's part. He says that the agent told him that the company would not accept a lease on less than 50 acres and that they would put his part in the lease as containing that much. Other testimony for him tends

to confirm this fact. The agent taking the lease denied any such information and said that the lease was merely a renewal of the previous lease which was executed by Willie to the Ohio Fuel Company and assigned by it to Warfield. It may be observed that previous to the lease by Willie to the Ohio Fuel Company he had also leased the 50 acres to one Dotson. Both the lease to the Ohio Fuel Company and Warfield described the land leased by Willie as containing 50 acres. A judgment was rendered by the trial court adjudging that Willie was the owner of the oil, gas and minerals in all of the tract conveyed to him and his mother in the partition and that the appellants had no interest in the oil and gas or minerals in this 50-acre tract, which was one-third of the farm. The effect of this judgment was, of course, that Willie was entitled to all the royalties from the well on the 50-acre tract instead of one-half of the royalties which Warfield had been paying him. From that judgment, the appellants, Laws and Sutphin, appeal, contending that Willie is entitled only to one-half of the royalty in the well drilled by Warfield on the 50-acre tract allotted to him and his mother. Willie Sturgill has also appealed, contending that he is entitled to one-sixth of the royalty in the entire tract of 150 acres but that, in the event he is not so entitled, he is at least entitled to the full one-eighth royalty on the well drilled by Warfield on the 50-acre tract. The two appeals are considered together.

It is at once apparent that the judgment may not be sustained since it gave to Willie, in effect, the oil, gas and minerals in one-third of the farm when he never at any time owned more than a one-sixth interest. The real question that confronts us is whether Willie is entitled to one-sixth of the oil and gas produced from the entire farm or whether he should be limited to receiving one-half of the royalties produced from the well drilled by Warfield on the 50-acre tract allotted to him and his mother. The argument is made that Willie is entitled to the entire royalty from the Warfield well because it was drilled on the part allotted to him personally in the division of the farm and not on the part which the parties had in mind as going to his mother. We are of the opinion, however, that this position cannot be sustained since, even though Willie pointed out to Warfield's agent what he conceived to be the dividing line

between his part and his mother's part, nevertheless the appellants, Laws and Sutphin, who were the owners of five-sixths undivided interest in the oil, gas and minerals in the entire tract, could not be affected by any transaction between Willie and Warfield in which they had no part and knew nothing about. As a matter of fact there was no agreement between Willie and his mother or between any of the joint owners establishing a dividing line between his part and his mother's part that would be binding on any of the parties since it was merely an unexecuted parol agreement, if it was made. There was no establishment of a marked division line between Willie's part and that of his mother such as would be binding on them.

It is true that when the other five joint owners made a conveyance of their undivided interest in the oil, gas and minerals such action on their part could not affect Willie adversely and by carving their mineral rights out of the fee they could not require Willie to sever his mineral estate from the surface against his will. Ball v. Clark, 150 Ky. 383, 150 S. W. 359. And the generally established rule in this state is that a partition may generally best be had of a tract of mineral land by a sale on the ground of indivisibility. Warfield Natural Gas Co. v. Cassady et al., 266 Ky. 217, 98 S. W. (2d) 495. Pursuant to this rule, when the joint owners de· cided to divide the land in which they were co-tenants, the appellee, Willie B. Sturgill, as the owner of a one-sixth undivided interest in the entire tract in fee simple could have maintained a proceeding under section 490 of the Civil Code of Practice to sell the entire tract on the ground of indivisibility. Instead of doing this however, he joined with the others in making a partial partition of the property and in this partition they laid off to him and his mother jointly their interest in the farm. He and his mother elected to take their parts together and when they did so she had an interest only in the surface and he had an interest in the fee. This partition was made fourteen years before the filing of this action and Willie elected to abide by this partition and treat it as a partition of his mineral right, transferring his one-sixth undivided interest in the whole tract to the 50-acre tract allotted to him and his mother. He acted upon and ratified this division by continuously leasing the 50-acre tract allotted to him and his mother

for oil, gas and mineral purposes and made no claim to the oil, gas and minerals in the portions allotted to the others. On the contrary, he knew that Piney, lessee of appellants, drilled the two wells on the portions allotted to the other joint owners and made no complaint as to this and claimed none of the royalty.

It will also be observed that while the partition deeds executed between the parties made no exception of the mineral rights, which had been parted with by all except Willie, neither Myrtie nor Bev had asserted any interest in the minerals by reason of the execution of the deeds to them by their brother, Willie. While these partition deeds failed to point out the intention of the parties to effect a partition of the mineral rights, the subsequent conduct of the parties evidences that these deeds were executed for the purpose of evidencing the allotments which had been made to the parties and not for the purpose of passing a title distinct from the ownership which the parties already had. Willie, by accepting the allotment to himself and his mother jointly and by the subsequent leasing of that portion of the land for oil, gas and mineral purposes must be held to have acquiesced in the partition deeds as being a partition of the oil, gas and mineral rights and as segregating his mineral rights to the 50-acre tract allotted to himself and his mother. It is true that his lease of the 50-acre tract purported to cover the entire oil, gas and mineral rights in that 50 acres when, as a matter of fact, he was the owner of only a one-half interest therein. He may have thought he was the owner of all the mineral right in that tract or he may have been intending to lease only that portion of the 50-acre tract which he had in mind as having been allotted to him personally in the division. Nevertheless the appellants, who were the owners of an undivided one-half interest in the mineral rights in the 50-acre tract, could not be affected by the fact that Willie intended to lease only a portion of the 50-acre tract or that he had a side agreement with Warfield to that effect. The division of the land was treated by Willie and the other owners as a division of the mineral right, allocating Willie's part to the 50 acres, and the only equitable solution of the controversy is to hold that this agreed division was binding on Willie at least in so far as the rights of appellants are affected. This being true, Willie is entitled only to one-half of the royalty in

the well drilled by Warfield on the 50-acre tract allotted to him and his mother and the appellants, Laws and Sutphin, are entitled to the other one-half.

The judgment is reversed on the appeal of Laws and Sutphin, with directions to enter a judgment in conformity with this opinion. Affirmed on appeal of Willie Sturgill.