## Fugate v. Smith et al.

March 20, 1942.

Clark Pratt for appellant.

H. H. Smith for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This equity action was filed in the Knott Circuit Court by the appellee and plaintiff below, H. H. Smith, against the appellant, Dial Fugate, to quiet plaintiff's title to the oil and gas under a tract of land in Knott County containing something like 94 acres. Defendant, Fugate, by his answer and cross-petition brought into the case the other appellee, Warfield Natural Gas Company (to which the right to extract the oil and gas had been acquired by it), since he claims some right against it growing out of his alleged interest in and to the oil and gas claimed to be owned by the plaintiff, Smith. The issue as to plaintiff's ownership of all the oil and gas under the tract of land, and his consequential right to have the title quieted as against Fugate's adverse contention, was submitted to the court on a stipulation of facts which reveal this situation:

Prior to the year 1919 Fugate owned the fee simple title to the 94 acre tract of land. On August 28 of that year he sold all the mineral of every kind under his land to the Eastern Kentucky Realty Company and received a consideration therefor. But before it recorded its deed thereto a fire destroyed the deed, and thereafter Fugate refused to recognize the conveyance and sold about 57 acres of his land to his father-in-law, C. J. Johnson, and which conveyed to the vendee a fee simple title carrying all the minerals to that portion of the tract. Thereafter the Realty Company filed an action in the Knott Circuit Court to require Fugate and wife to re-execute to it their deed to the mineral under his tract of land,

a portion of which (as stipulated) he had sold in the meantime to his father-in-law, Johnson. Before that case was tried it was compromised by Fugate and wife, and Johnson and wife, executing a deed conveying all of the minerals underlying the land to the Realty Company, except the oil and gas, which were excepted from the conveyance by the vendors, and which left them the owners of their respective portions of the surface of the land and the oil and gas thereunder in the same proportions. A part of the consideration for that compromise was that Fugate should pay the attorney of the Realty Company his fee for bringing the action to require the re-conveyance to the plaintiff therein. Therefore on the same day Fugate and wife, and Johnson and wife, as per agreement with the attorney, conveyed to him a 1/3 interest in the oil and gas underlying all of the land, and that deed contained this language: "It is understood and hereby agreed, that the said Dial Fugate, Colie Johnson and H. H. Smith are the joint owners of all the said oil and gas herein, and each owning an undivided one-third interest in same."

Thereafter Fugate and wife sold their remaining 37.6 acres, including all minerals thereunder, to Joe Spence, who later sold it to one John Hale, from whom plaintiff, Smith, later bought the oil and gas minerals thereunder. Johnson and wife, after the compromise referred to, sold to William Owens their portion of the entire tract of land including minerals; and Smith later purchased from that vendee the oil and gas under his portion of the tract of land which he obtained from the Johnsons. The appellee, Smith, therefore claimed that he obtained 1/3 of the minerals in contest under the compromise deed referred to and the other 2/3 through and by the transactions above, and as set forth in the stipulation of facts. He makes two contentions in this case as supporting his right to the relief sought by him, and which are: (1) That Fugate—as well as the Johnsons—obtained no interest in the oil and gas underlying the land under the deed conveying to Smith a third interest in the oil and gas, that either of them did not already own, since they were only the grantors in that deed to the only grantee therein, who was Smith, to whom the joint grantors conveyed a 1/3 interest in the oil and gas underlying the entire tract, and that since a grantor can convey in his deed nothing to himself no additional rights or interest in any portion of the land accrued to the

vendors by that deed that they did not already own; and (2) that if mistaken in the first contention and the rights of the parties are to be governed upon the theory that under the same deed each of the parties (Smith, Johnson and Fugate) took a 1/3 interest in and to the underlying oil and gas, then Smith after he purchased the interest of Johnson and purchased the oil and gas from Hale—the vendee of Spence, the latter of whom being the vendee of Fugate—became the owner of the other 2/3 interest in the contested minerals and which made him the owner of all of it. The court under the agreed facts sustained plaintiff's petition and quieted his title to the oil and gas he claimed to own, and also adjudged that the Warfield Natural Gas Company, the lessee of the oil and gas privileges under the entire tract, should pay the entire rentals to Smith. From that judgment appellant, Fugate, prosecutes this appeal.

For the purposes of this case we have concluded not to determine contention (1) supra made by Smith, since the legal question therein is somewhat confused and not altogether settled by uniform court approval, which Smith in his brief filed in this court admits and says: "That it is not so important to a proper decision of this case, as we believe, whether the deed from Dial Fugate and wife and C. J. Johnson and wife to H. H. Smith, conveyed to Dial Fugate any part of the oil and gas in the tract theretofore conveyed by Fugate to C. J. and Polly Johnson, or whether appellee, H. H. Smith, took a one-third interest with Dial Fugate in the 37.6 acre tract and with the Johnsons in the 56.7 acre tract; or whether appellee took a one-third interest with Fugate and Johnson in the entire tract." He therefore, bases in this court his right to the relief sought chiefly on the fact that Fugate parted with all of his interest in the oil and gas under the entire tract by his sale to Spence of his 37.6 acres, his entire surface portion of the whole tract.

Smith's argument is—that when Fugate sold to Spence the portion of the surface of the entire tract he owned, and conveyed him an absolute title thereto carrying with it all the minerals thereunder, he then chose to take his 1/3 interest in the minerals underlying the entire tract as measured by his surface ownership, and he conveyed that proportionate interest in the contested minerals to Spence, and which as a legal proposition is true under authorities hereinafter inserted. But, such

conveyancing by a co-tenant, though binding on himself, is not so with reference to his co-tenants who did not consent, agree to or acquiesce therein. Also it is recognized by Smith that a different rule applies in case of the division of minerals—and especially fugitive ones as are oil and gas—than applies to the division of the surface of real estate. But, nevertheless, it is argued by Smith (and no doubt correctly so) that the other co-tenants and co-owners of the property being dealt with, though fugitive minerals, may consent for another co-tenant to dispose of his interest—as did Fugate in this case when he sold in fee simple that portion of the entire tract in which he owned the surface rights—and which the authorities post also sustain. Those authorities are: Potter v. Wallace, 185 Ky. 528, 215 S. W. 538; Laws v. Sturgill, 287 Ky. 37, 151 S. W. (2d) 423; Ft. Jefferson Improvement Company v. Dupoyster, 112 Ky. 792, 66 S. W. 1048, 2 L. R. A., N. S., 263; also the case of Pellow v. Arctic Iron Company, 164 Mich. 87, 128 N. W. 918, 47 L. R. A., N. S., 573, Ann. Cas. 1912B, 827, in which co-tenancy in mineral rights as distinguished from surface rights was involved.

The rule as so approved in the cited cases is also stated to be the correct one in the text in 7 R. C. L., pages 881, 882 and 883, Sections 76, 77 and 78. The first section states that such a conveyance transfers as between the vendor and the vendee the former's entire interest in the property held in co-tenancy, but whether or not the vendee as between himself and the other co-tenants becomes entitled to the specific portion of the entire property so conveyed to him by one joint tenant, depends upon facts affecting the interests of the non-consenting co-tenant or tenants. The next section (77) confirms the right of any non-consenting co-tenants to ratify such a transaction and in which it is said: ''A conveyance of a specific part of the common property by one of several co-tenants may be ratified by the other co-tenants, and thus made to operate as a partition or conveyance in severalty.''

In this case, as we have seen, the sale of Fugate's interest to Owens has been acquiesced in and consented to by Fugate's other co-tenants, and which relieves the situation of any of the complications attendant upon their non-consent thereto. The instant joint owners were all adults, free from legal disability, and had the

right to measure their interest by giving their consent thereto, which, in effect, is an agreement to accept what has been done and to abide by it. Therefore, Fugate manifesting no interest in any of the oil and gas underlying the involved tract of land, and Smith having shown his title thereto, the court properly so adjudged, and quieted his title as prayed for in his petition.

Wherefore, the judgment is affirmed.