B. A. DUFFY et al., Appellants,

v.

Gib CALLAWAY, Appellee.

No. 3348.

Court of Civil Appeals of Texas.

Eastland.

Jan. 24, 1958.

Rehearing Denied Feb. 14, 1958.

McMahon, Smart, Sprain & Wilson, King & Willoughby, Abilene, for appellants.

Gib Callaway, Brownwood, Scarborough, Black & Tarpley, Abilene, for appellee.

GRISSOM, Chief Justice.

In 1942 Callaway purchased 9,624 acres of land in Stonewall County. B. A. Duffy, A. S. Goodloe and E. W. Moutray then jointly owned 721 acres of minerals

scattered throughout that ranch. Amon G. Carter owned 984 mineral acres therein. In March, 1945, Callaway and Duffy, Goodloe and Moutray executed one oil and gas lease, for a primary term of ten years, on all of their separately owned interests in said ranch to F. L. Hawk. Carter executed a separate lease. In 1945 Hawk assigned approximately half of the lease to Honolulu Oil Corporation and the other half to George Livermore. On March 2, 1947, Livermore released all that was assigned to him. The Hawk lease did not contain a provision granting the lessee the right to surrender part of the leased premises and retain part. Approximately half of the entire tract covered by the community lease to Hawk was released to said lessors by Livermore. Callaway and Duffy, Goodloe and Moutray each accepted the release of his minerals and thereafter independently executed leases thereon to new lessees without the joinder of the other. Thereafter, neither claimed any of the bonuses or rentals paid on said new leases of the released minerals. At the time of the execution of said release there had been no development under the Hawk lease and there was no production on any of the land originally covered by said community lease until about eight years thereafter.

The Hawk lease contained no pooling agreement. It did not contain an entirety clause. See Eighth Annual Institute on Oil and Gas Law and Taxation, pages 153, 156 and Superior Oil Co. v. Dabney, 147 Tex. 51, 211 S.W.2d 563. It did not grant the lessee the right to release part of the leased minerals. It appears to have been written upon an ordinary printed lease form and no clauses were added except a provision that drilling should not stop payment of rentals on any land except the section upon which a well was being drilled. Callaway contends that this is a provision against pooling. We do not think so.

The first production was obtained on June 10, 1955, more than ten years after execution of the Hawk lease and eight years

after the release by Livermore. There are now eight producing wells on land originally covered by the Hawk lease. Six of them are on land released by Livermore. Said six wells were drilled under new leases executed after said release by only the owner of that particular tract.

Callaway instituted this suit against Duffy, Goodloe and Moutray, or their successors, seeking a judgment declaring that their royalty interests were not pooled by the Hawk lease. Duffy, Goodloe and Moutray answered by seeking a judgment declaring they were pooled and that defendants are entitled to participate in production on all land originally covered by the Hawk lease, regardless of the release by Livermore, the acceptance by each of his own released minerals, the separate execution of new leases and collection and retention by each during all said time of bonuses and rentals paid thereon. The court held that the royalties were not pooled by the Hawk lease and that each was entitled to all the royalties paid on oil produced from his own land. Duffy, Goodloe and Moutray, or their successors in interest, have appealed.

Since the decision in French v. George, Tex.Civ.App., 159 S.W.2d 566 (Writ Ref.), our Supreme Court has consistently held under the facts not materially different from those in this case that the execution of a single lease by several owners of adjoining tracts, without expression of a contrary intention, has the effect of pooling the land covered by the lease, as a matter of law. See Ward v. Gohlke, Tex.Civ.App., 279 S.W.2d 422, 427 (Writ Ref.). The statement by Judge Calvert in Southland Royalty Co. v. Humble Oil & Refining Co., 151 Tex. 324, 249 S.W.2d 914, 916, seems to be conclusive of the proposition:

"It may be noted here that respondents suggest a re-examination of the Parker and George cases on the theory that the courts should not attribute to lessors jointly executing a general form lease, without more, and intent

to pool or unitize their properties; that the language of the general form lease was never intended to effect or to operate a pooling agreement. This argument is not entirely unappealing. The Texas rule in this respect is not of universal application. See 116 A.L.R. 1267 et seq. On the other hand, the law of the Parker and George cases has now become a rule of property in this state and 'should not be changed in the absence of other controlling circumstances, even though good reason might be given for a different holding.' Tanton v. State National Bank of El Paso, 125 Tex. 16, 79 S.W. 2d 833, 834 [97 A.L.R. 1093]. No doubt many such leases have been executed and delivered by lessors and accepted by lessees in reliance on the holding in the Parker and George cases that they effectively unitize the land included therein. It must therefore be held that when the parties executed the lease in 1932 they intended to create a unitized lease with all of the usual incidents and legal consequences thereof."

Hon. Leo Hoffman in the Seventh Annual Institute on Oil and Gas Law and Taxation, at pages 221, 222, said:

"It has been established in Texas as a matter of law and as a rule of property that when several individual owners of separate tracts unite in a single lease to a third party for oil and gas under the usual lease form, with no contrary provision, their royalty interests under the lease are pooled, and the royalties on production anywhere on the lease must be divided or shared among the lessors in the proportion that the acreage contributed by each bears to the total acreage. The Texas Supreme Court in Southland Royalty Co. v. Humble Oil & Refining Co., has also expressed the ultimate view of the matter by ruling that the pooling of royalty interests brought about by the community leases is not limited to the sharing of royalty income but constitutes a pooling for all purposes during the life of the community lease, so that actual production from one tract covered by the lease is established as constructive production from each tract and will thereby perpetuate a term mineral interest which exists in the tract having no actual production. All of that is an implied effect of the making of the community lease in Texas."

In Garza v. De Montalvo, 147 Tex. 525, 217 S.W.2d 988, 991, our Supreme Court held that when several owners of separate tracts executed one oil and gas lease treating the separate tracts in the lease as one, in the absence of an agreement to the contrary, they were thereby pooled for the life of said lease and the owners of the separate tracts were entitled to share in the royalties therefrom in proportion to their respective ownership of the leased land. We, therefore, hold that the royalty interests of Callaway and Duffy, Goodloe and Moutray were pooled and that they are entitled to share in the royalty from land still retained under said lease in proportion to their ownership of minerals in the retained premises. But our Supreme Court also held that when said lessors subsequently partitioned the leased land and separate ownership was recognized by the lessee the royalty interests were segregated so that each was thereafter entitled only to the royalty produced from his own land. The court said:

"The question remains whether the rights of the lessors were changed by the partition agreement, so as to limit the Garza plaintiffs to the minerals under the tracts set aside to them respectively. We have concluded that this was the effect of the partition agreement."

In Coates v. De Garcia, Tex.Civ.App., 286 S.W.2d 691, the owners of separate tracts pooled their royalty interests by execution of a community lease which, as

here, contained neither a pooling agreement nor an entirety clause, but subsequently the land was partitioned by judicial decree. The court held that this effected a segregation of the royalty interests of the lessors so that each was thereafter entitled to receive the royalties paid only on the oil produced from the tract allotted to him. See also Struss v. Stoddard, Tex.Civ.App., 258 S.W.2d 413, 419 (RNRE); Eighth Annual Institute on Oil and Gas Law and Taxation, page 143.

In Landgrebe v. Rock Hill Oil Co., Tex. Civ.App., 273 S.W.2d 636 (RNRE), there was a pooling of three tracts by the joint execution by separate land owners of one lease. Thereafter, there was a partition of only two of the three pooled tracts. Plaintiffs sought a judgment declaring that all of the three tracts covered by the lease were thereby relieved of the effect of pooling. The only production was from the tract which had not been partitioned. The court simply refused to sustain plaintiffs' contention that partition of two of the three tracts included in a pooled lease had the effect to "depool" all three tracts.

Although there was no provision in the lease in the instant case granting lessee the privilege to surrender a part of the leased premises and retain the remainder, an assignee of the lessee surrendered about half of the leased minerals, owned separately by Callaway and Duffy, Goodloe and Moutray, and each accepted same and leased his interest in the released minerals without joinder of the other and each collected and retained the bonuses and rentals paid on his minerals without regard to the pooling created by execution of the Hawk lease. This situation continued without dispute for about eight years. The effect of pooling would have remained throughout the life of the lease as to all the land unless changed by agreement. The life of the lease and the presumed pooling agreement could have been terminated by the unilateral act of the lessee in merely failing to drill or pay rent. The effects of such a pooling continued only so long as the lease remained in force. The right of the parties thereto to change such presumed pooling agreement was recognized in Southland Royalty Co. v. Humble Oil & Refining Co., supra. The lease did not contain the customary provision permitting the lessee to surrender part of the leased premises and retain the remainder. Nevertheless, the parties accepted a partial surrender and thereafter for many years each treated his own released minerals and the others as though they had never been included in the joint lease. Their action certainly evidenced an intention to terminate the presumed pooling agreement as to the released minerals and to partition the same. See Hoffman, Voluntary Pooling and Unitization, pages 67, 73; Fifth Annual Institute on Oil & Gas Law and Taxation, page 213; Edwards v. Edwards, Tex.Civ.App., 52 S. W.2d 657, 661 (Writ Ref.); Mitchell v. Allen, 69 Tex. 70, 6 S.W. 745; Abbott v. Gulf Prod. Co., Tex.Civ.App., 100 S.W.2d 722, 732 (Writ Dis.); O'Quinn v. Looney, 194 Va. 548, 74 S.E.2d 157, 159; Tanner v. Olds, Cal.App., 166 P.2d 366, affirmed 29 Cal.2d 110, 173 P.2d 6, 167 A.L.R. 1219. The trial court could have concluded that they thereby terminated the pooling agreement so far as the released minerals are concerned and partitioned the released minerals and removed them from the effect of the presumed pooling agreement. J. M. Guffey Pet. Co. v. Jeff Chaison Townsite Co., 48 Tex.Civ.App. 555, 107 S.W. 609, 613; Simpson-Fell Oil Co. v. Stanolind Oil & Gas Co., 136 Tex. 158, 125 S.W.2d 263, 269, 146 S.W.2d 723; 17 Tex.Law Rev. 506; Laws v. Sturgill, 287 Ky. 37, 151 S.W.2d 423, 425. The judgment is reversed and the cause is remanded.

WALTER, J., disqualified and not sitting.